FILED
 2012 Apr-24  PM 02:38
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **FRANCIS MCINTYRE THOMPSON,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| vs. ) | **CIVIL ACTION NO:** |
| ) | **12-JEO-1018-S** |
| ) | |
| **RESURGENT CAPITAL SERVICES,** ) | |
| **L.P. AND PYOD, LLC,** ) | |
| ) | |
|     **Defendants.** ) | |

## DEFENDANTS' MOTION TO STRIKE PORTION OF PLAINTIFF'S COMPLAINT

**COME NOW**, Defendants Resurgent Capital Services, L.P. (hereinafter "Resurgent") and PYOD, LLC (hereinafter "PYOD") and respectfully requests this honorable Court, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike portions of Plaintiff's Complaint. In support of said motion, Resurgent and PYOD submit to the Court as follows:

    1.    Rule 8 of the Federal Rules of Civil Procedure states that a Complaint must contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Further, Rule 8(d)(1) states that a Complaint's allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In the event that the averments in a Complaint exceed a short and plain statement of the claim, Rule 12 of the Federal Rules of Civil Procedure provides for such averments to be stricken from the Complaint either upon the court's own action or upon motion made by a party before responding to the Complaint. Fed. R. Civ. P. 12(f)(2).  Specifically, "the court may order stricken from any pleading any … redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

{W0320335.1 }

2. Rule 12(f) is designed to eliminate inflammatory material not relevant to a claim for relief. For example, averments that simply reflect poorly on moral character and otherwise have no bearing on the causes of action set forth in the Complaint are due to be stricken under Rule 12(f). Federal courts have held that a pleading, or portion thereof, qualifies as 'scandalous' for the purposes of Rule 12(f) when it needlessly purports to comment on the moral character of a party. *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004) (citing 2 *Moore's Federal Practice* § 12.37 [3], at 12–97). Further, "if allegations in a complaint are irrelevant and prejudicial to the defendant, a motion to strike will be granted." Wiggins v. Philip Morris, Inc., 853 F.Supp. 457, 457 (D.D.C. 1994).

3. The present case involves the defendant's alleged violations of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA"). It is claimed the defendants lied to the plaintiff about whether she had to pay a debt outside the period of prescription, and threatened to credit report the account if she did not. Plaintiff's common law claims are based on the same conduct. However, Plaintiff's Complaint contains over 100 averments, many of which reference "debt collectors" collectively and "Alabama consumers" collectively. These broad generalizations have no bearing on the specific allegations in the present case. They do serve, however, to encourage the reader to condemn the entire debt collection industry for matters isolated from and irrelevant to the actual controversy in dispute. Such sensationalism is reserved for closing arguments (if indeed such rhetoric is appropriate at all) rather than the pleadings before the court.

4. This makes sense, as such inflammatory and argumentative language is typically designed only to elicit sympathy from the jury, to confuse the issues, or to pointlessly incite anger. The Complaint is a part of the record, and as such, is available to the jury. Plaintiff's

{W0320335.1 }

clear goal in including these provocative accusations in the Complaint is to prejudice the jury against debt collectors in general and to entice the jury into considering these allegations instead of facts submitted to prove the underlying claims. The jury should not be allowed to read the scandalous and irrelevant portions of the complaint because those portions will only improperly prejudice Resurgent and PYOD by casting all debt collectors in an unfavorable light.

5. The significance of the above point is underscored by the truth that motions to strike pursuant to Rule 12(f) should be given <u>more</u> deference when a jury will hear the facts. In *McKenzie v. Citation Corp., LLC*, the court denied a Motion to Strike because the case was only before a Judge, not a jury. The Court stated that "the court is capable of considering only the relevant and proper portions of the evidence submitted." *McKenzie v. Citation Corp., LLC*, 2007 WL 1424555, S.D. Ala. 2007. However, a jury is likely not as savvy as the court in distinguishing the irrelevant and prejudicial allegations from those which support only the underlying causes of action. Thus, the improper portions of Plaintiff's Complaint, as identified in the following paragraphs, are due to stricken so as not to confuse or mislead the jury.

6. Paragraph 2 of the Complaint reads in its entirety as follows:

> 2. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 U.S.C. § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:
>
>   (a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, **and to invasions of individual privacy.**
>   (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>   (c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

{W0320335.1 }

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce.  Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

The emphasis above is from the Complaint but <u>not</u> from the actual FDCPA.  The FDCPA was enacted over thirty years ago (specifically, 1977) in response to collection conduct taking place at that time.  The inclusion of this language, with supplied emphasis, is designed to create the false impression that this type of conduct is rampant today and, moreover, that the Defendant participates in it.  Its inclusion necessarily casts all debt collectors in a negative light.  It is designed only to create within the jury a generally negative impression of the Defendant and its industry.  The events occurring in 1977 which prompted the enactment of the FDCPA do not make the events and issues in this case more likely to be true.  Even if it did, these types of unrelated averments have only one purpose:  to impermissibly influence the fact finder.  Rule 12(f) serves to eliminate redundant, immaterial, and inflammatory averments.

      7.      Paragraphs 33 through 38 of the Complaint can be addressed in unison as each averment is designed to scandalize the debt collection industry.  These averments, if true, would not prove Plaintiff's case and are likely inadmissible regardless

33. When consumers pay old debts because of the lies and intimidation of Defendants, the response of Defendants is that the consumers should have paid anyway and sometimes consumers need to be pushed or forced to pay the debts.

34. Defendants feel no remorse for what they did to Plaintiff and what they do to numerous other consumers in Alabama and in other parts of the country.

35. Even though Defendants know all of the above, they are perfectly willing to continue to act illegally for several reasons.

36. First, Defendants believe that most Alabama consumers will not know that it is illegal for Defendants to threaten to credit report on debts that are too old to credit report.

37. Second, Defendants believe that the very few Alabama consumers, who realize this is illegal for Defendants to act in this way, will be able to find representation or will otherwise take action.

38. Defendants believe that these very few Alabama consumers who do take action will either drop the matter or will file a pro se case where counsel for Defendants will be able to defeat the claims of the pro se consumer plaintiff.

To begin with, these averments again attack the industry in general and are included exclusively for the purpose of encouraging the jury to dislike all debt collectors because of the sensationalized practices. Averments as to what the Defendants believe regarding "most Alabama consumers" is impertinent and scandalous. Many are argumentative and cannot be denied without simultaneously creating the false impression that aspects of the averment are true. For example, should the Defendant deny Paragraph 34, it could be fairly construed that the Defendants are agreeing with the Plaintiff that it has no remorse for its illegal conduct. To admit to 34 would be to confess to a legal conduct the Defendant did not undertake. This is the essence of what Rule 12(f) was drafted to combat.

    8.    Plaintiff's averments regarding the state of the debt collection industry (though the industry is couched as "Defendants" in the Complaint) continue in Paragraphs 39 through 44. Plaintiff uses these averments to goad the jury into awarding more than nominal/statutory damages, because "the defendants" don't think jurors have the nerve. If these types of

{W0320335.1 }

arguments and representations are ever proper, it is certainly not within the confines of the Complaint:

> 39. Third, even if the Alabama consumer is able to find representation, Defendants are confident that they will not have to pay any damages above the maximum statutory damages of $1,000.
>
> 40. Defendants believe that judges will not allow mental anguish to go to the jury.
>
> 41. Defendants believe no punitive damages will be assessed against them under state law.
>
> 42. Defendants believe that any suit against them under the FDCPA can be defeated by an offer of judgment of $1,501 or some other small number above $1,000.00
>
> 43. Defendants believe that since they will rarely be sued in Alabama, particularly given the large number of violations they commit in Alabama, and given that they believe (incorrectly) that they are not subject to mental anguish and punitive damages claims, Defendants are quite willing to continue to break the law in Alabama.
>
> 44. Defendants have determined that the costs of limited litigation (by settling cases cheaply or small offers of judgment) are vastly outweighed by the profit in harassing and abusing Alabama consumers into paying money that would not have been paid if Defendants had not harassed and abused the Alabama consumers.

These averments are designed for one purpose: to provoke the jury into a large award based on unproven, unfounded, and scandalous averments that the Defendants believe they will never face substantial damages. None of the above averments can be fairly admitted or denied which, the Defendant submits, is the purpose of the averment itself. For example, should the Defendant admit Paragraph 39, it in essence dares the jury to award more than statutory damages. Conversely, by denying this averment, the Defendant is tacitly approving and encouraging the jury to award more than statutory damages by indicating it is confident the jury will do so. The averments go so far as to characterize what the "Defendants" believe this Court will do (See Paragraph 40). These averments are not designed to state a claim or cause of action. Instead,

{W0320335.1 }

they are designed to trap the Defendant or otherwise allow the Plaintiff to argue through the Complaint that the Defendants are of poor character, morals, or judgment.  This type of argument is particularly insidious when found in a Complaint which is publicly available to jurors, or could even reach the jury room itself.  There is no way to admit or deny these averments, and the Complaint serves as a mouthpiece for opposing counsel's arguments.  Again, this is not the purpose of the Complaint or else Rule 12(f) would have little function.

9. At this stage, the averments shift their focus to the inherent nobility of Plaintiff's claim and the dastardly intentions of the Defendant in contesting it.  These averments continue to be argumentative and are premised on unfounded allegations involving "Alabama consumers." These averments do not pertain to the claims raised by the Plaintiff and do not make it more or less likely that she was subject to harassment.  Averment 49 is not far removed from "the Defendants have stopped beating their wives."  It can't be denied or admitted.  These averments are self-serving, immaterial, impertinent, and should be removed per FRCP 12(f):

> 45. Unfortunately, Defendants are correct in their conclusion that it is more profitable to violate the law than to obey it.
>
> 46. This lawsuit is being brought to change that conclusion.
>
> 47. Defendants' actions not only harm Alabama consumers, but also put legitimate and law abiding debt collectors at a competitive disadvantage.
>
> 48. Congress recognized this problem over 30 years ago and that is part of the reason the FDCPA was passed.
>
> 49. Defendants have analyzed the situation and determined that they enjoy a competitive advantage due to their willingness to violate the law.
>
> 50. This lawsuit seeks to change that analysis and conclusion.

      10.    Paragraphs 51 through 55 concern the Defendant's website. These averments – some of which use language from the "Career Opportunities" section of the website – are again included for no legitimate purpose. The content of the Defendant's website is likely never going to be relevant but, if it were to be relevant, it would be evidence the Plaintiff would have to prove through competent evidence. Instead, these averments are included in the Complaint for purposes of reaching the jury without ever having to be deemed relevant or admissible. They are immaterial and do not make any claim the Plaintiff brings more or less likely to be true:

> 51. Defendant Resurgent states on its website that "We are committed to treating all consumers with respect, fairness and honesty."
>
> 52. Referencing the various standards and regulations that apply to debt collection, Resurgent states on its website "Rather than being content merely to meet these standards, we strive to exceed them."
>
> 53. Resurgent goes on under a heading of "Our Culture" that "Resurgent prizes integrity and an engaged, energetic quest for excellence in its business dealings with our consumers, business partners and fellow associates. We devote ourselves to building bridges for each of our constituencies so they can move ahead in the direction of their goals."
>
> 54. Explaining this, Resurgent states "We show our customers how to build bridges to a brighter financial future.
>
> 55. Finally, under a heading of "Our Culture" which is under "Career Opportunities" is the following quote "We conduct ourselves with integrity and honor in all things."

The Defendant moves to strike these averments per Federal Rule of Civil Procedure 12(f).

      11.    Paragraphs 57 and 58 read as follows:

> 57. Defendants have not apologized to Plaintiff.
> 58. Defendants have no intention of apologizing to Plaintiff

At this stage, we are fairly far removed from a short and concise statement of the claim. Whether or not the Defendant apologizes would have nothing to do with any cause of action alleged by the Plaintiff. These averments have no use other than to purposelessly castigate the

Defendant.  All parties are protected from irrelevant yet inflammatory accusations in any pleading, and these two averments should be stricken.

12.  Averments 68 through 70 are equally argumentative and inflammatory.  They require the Defendant either to agree that a large punitive verdict is necessary to make it stop misbehaving, or to deny that even a large award will deter it:

> 68. The only way that abusive debt collectors like Defendants will stop their abusive practices towards consumers is by a jury verdict fully compensating Plaintiff for the harm done to Plaintiff and by a punitive damage award.
>
> 69. A punitive damage award will get the attention of Defendants and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain an unfair competitive advantage over honorable, law abiding collectors.
>
> 70. A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA – stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

For the reasons already explained, Rule 12(f) applies to these averments and they should be removed from the Complaint.

13.  Finally, Paragraphs 81 and 82 again seek to criticize the entire debt collection industry by focusing on specific language within the Fair Debt Collection Practices Act and the subsequently enacted Gramm Leech Bliley Act.  Again, by adding emphasis absent in the originals, the Plaintiff seeks impermissibly to link the specific purpose of these two statutes to the conduct alleged against the Defendant.  Plaintiff is attempting to lend legitimacy to her claims by creating the impression Congress has endorsed the necessity for lawsuits such as hers.  These averments are actually immaterial:

81. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

    **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

    15 U.S.C. § 1692(a) (emphasis added).

82. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purpose:

    It is the policy of the Congress that **each financial institution has an affirmatifve and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

    15 U.S.C. § 6801(a) (emphasis added).

Specifically, the Gramm Leech Bliley Act does not even provide a private cause of action. The language quoted pertains to the disclosure of the debtor's personal information (like social security number), a situation that has nothing to do with the allegations in this case. These averments are included only to create the impression of rampant wrongdoing within the entire debt collection industry that has required Congressional intervention. Even if true, these averments have nothing to do with the specific conduct of the Defendant in this case and these sensationalized arguments should not be allowed to stand in the Complaint.

WHEREFORE, PREMISES CONSIDERED, based on the foregoing arguments, Resurgent and PYOD respectfully request this Court to strike the aforementioned portions of Plaintiff's Complaint, and any other portions that the Court deem improper under Rule 12(f).

{W0320335.1 }

Respectfully submitted,

 /s/ Neal D. Moore, III
Neal D. Moore
COUNSEL FOR DEFENDANTS
RESURGENT CAPITAL SERVICES, LP
AND PYOD LLC

OF COUNSEL:
Ferguson, Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, AL 35243
Telephone: (205) 879-8722
Facsimile:   (205) 879-8831
Email: ndm@ffdlaw.com
Email: pwf@ffdlaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this the 24th day of April, 2012, a copy of the foregoing document has been served upon counsel for all parties to this proceeding via electronic filing:

John Watts
Watts & Herring
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
*Counsel for Plaintiff*

/s/ Neal D. Moore, III
OF COUNSEL

{W0320335.1 }