# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANCIS MCINTYRE THOMPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO: |
| | ) | 12-JEO-1018-S |
| | ) | |
| RESURGENT CAPITAL SERVICES, | ) | |
| L.P. AND PYOD, LLC, | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants, Resurgent Capital Services, L.P., and PYOD, LLC, and pursuant to Federal Rule of Civil Procedure 56 petition this Honorable Court for summary judgment in their favor as to every count in the Complaint. The Defendants respectfully submit there is no genuine issue of material fact and the Defendants are entitled to a judgment as a matter of law. In support, the Defendants hereby submit this Motion for Summary Judgment, Summary of the Argument and Statement of Undisputed Facts.

## SUMMARY OF THE ARGUMENT

Frances McIntyre Thompson filed this lawsuit because, based on her recollection, a debt collector threatened to credit report an out-of-statute debt. Ms. Thompson admits the call was about an old debt of hers. The Defendants admit the debt is now beyond the statute of limitations and cannot be reported against her

credit. Accordingly, the issue is whether Ms. Thompson was threatened as she alleges. She was not. It is for that reason this case should be dismissed.

This is not the typical "he said/she said" factual dispute reserved for the jury. This isn't a case where the debtor claims she received a series of harassing phone calls or confusing letters subject to competing interpretations. This isn't a case where the debtor alleges the collector was insulting or rude. Instead, Ms. Thompson has identified one very specific threat (credit reporting an old debt) made during one singular phone call (the one on March 19, 2012). The defendants admit the call was made, but deny the threat. Why would this factual dispute not go to the jury?

Because the call was recorded.[1] There is no dispute about its authenticity. Ms. Thompson was not threatened as alleged. In fact, rather than threatening to report the account, the representative told her it was not being reported. When the events at issue in a lawsuit can be objectively documented by a video or recording, summary judgment is proper even if the Plaintiff subjectively remembers things differently. It is not enough simply to gainsay objective evidence. This Court is not bound to honor <u>any</u> factual dispute a claimant can conjure. A factual dispute must be genuine. The call simply did not happen as alleged in the Complaint and a

---

[1] As this Court may remember, the production of this recording was subject to a Motion to Compel. The defendant advised counsel for the plaintiff that the call was recorded and did not match the allegations in the complaint. The defendant volunteered to produce the recording once Ms. Thompson testified, but she asked this Court to compel production so she could hear the real call before being sworn in. Her motion was granted.

reasonable jury could not conclude otherwise. Fortunately for all parties, Ms. Thompson was not subjected to the harassment described in the Complaint and this matter is due to be dismissed.

## RULE 56 STATEMENT OF UNDISPUTED FACTS

### Testimony of Plaintiff, Frances Thompson

1. This case involves Ms. Thompson's old unpaid debt with First U.S.A. Because of illness and disability, Ms. Thompson was unable to pay her indebtedness. Ultimately, First U.S.A. charged off the account. (Deposition of Frances Thompson, attached as Exhibit 1, p. 41-44).

2. Ms. Thompson believes a "charged off" debt means the debt has been cancelled and that she no longer had to pay it. *Id.* at 45, 47.

3. This case arose because Ms. Thompson believes she was threatened during a collection phone call with the defendants. The Defendants were calling about her old First USA account, now held by PYOD. Specifically, she was threatened that this old debt of hers would be reported against her credit. This is the only threat that was made in the collection phone call. *Id.* at 29-31.

4. Ms. Thompson cannot remember how many phone calls she had with the Defendants. *Id.* at 109. However, the only call at issue in this lawsuit is the one from March 19, 2012. *Id.* at 109-110. She is not complaining about receiving

the phone calls themselves. *Id.* at 111-112. In other words, this isn't a call volume case.

5. Ms. Thompson remembers answering the telephone call and instantly speaking to an account representative of the defendant. She denies there was any automated message or system prompts. In her recollection, if she were to initiate a call to Resurgent, she would go through the automated system, but if Resurgent called her, it was a direct connection to a live agent. *Id.* at 119-120.

6. Ms. Thompson would admit, however, that she had never called Resurgent personally so she actually doesn't know that. *Id.* at 120-121.

7. During the offending telephone call, Ms. Thompson recalls advising the defendant that the debt was out of statute. Per her recollection, the defendant agreed the debt was out of statute yet still stated "It would go on [her] credit report" if she does not pay it. *Id.* at 113. Other than the promise to turn the account over to the credit bureaus, there was nothing else threatening about the telephone call. *Id.* at 114-115.

8. Immediately after the telephone call, Ms. Thompson called the offices of her lawyers, Watts & Herring. *Id.* at 129. She had not yet made notes of the conversation from March 29, 2012. *Id.* She did after the call and then carried the notes to her lawyer's office. *Id.* at 130.

9. Ms. Thompson is (now) aware that the March 19, 2012, telephone call was recorded. She has heard it and is aware that it does not contain the threat to credit report the account. *Id* at 141-142. She understands the recording contradicts both her testimony and the handwritten notes she made of the telephone call she made after speaking to her lawyers' office. *Id.* at 141-143. In summation, Ms. Thompson testified:

> Q. Okay. Do you have any explanation for why the recording that you heard doesn't exactly match your notes in regard to the credit-reporting threat?
>
> A. No. I just know what I heard. That's all.
>
> Q. All right.
>
> A. Because I wrote it down.
>
> Q. I understand. Is there a chance that you wrote it down wrong?
>
> A. I just wrote down what I heard.
>
> Q. Okay. And as we sit here today, you don't believe that there's any possibility you could have misheard or misunderstood what was said to you?
>
> A. It's a possibility, but I know what I heard.
>
> Q. Now, in the recording that you listened to, did you understand everything that that gentleman said in the recording?
>
> A. I understood.
>
> MR. HERRING: I object to the form. You can answer.

> A. Oh, repeat the question, please.
>
> Q. Sure. When you heard that recording, were you able to understand what he was saying?
>
> > MR. HERRING: Object to the form.
>
> A. Yes.
>
> Q. In the recording he says, in fact, that your account is not being credit-reported. Is that true? In the recording that's what it says.
>
> A. Okay.
>
> Q. I mean, I don't know if you remember that one way or the other. I'm just asking. Do you know?
>
> A. Yes.
>
> Q. All right. And at least in the recording that you heard that you could understand that what he was saying was that it was not reporting and that it wouldn't report; right?
>
> > MR. HERRING: Object to the form.
>
> Q. I know the recording isn't what you say happened, so I'm not trying to - - I'm not implying that you agree that's what happened.
>
> A. Right.
>
> Q. But what I am saying is, once you heard that recording, that recording is clear. The account is not going to credit-report; true?
>
> A. What it says, yes.

*Id. at 143-145.*

10. Ms. Thompson claimed the gentleman she spoke to on the telephone never identified himself as an employee of Resurgent. *Id.* at 127. Ms. Thompson did not know the telephone call from March 19, 2012, was made from a department of Resurgent until she spoke to her lawyers. *Id.* at 160.

11. Later in her deposition, Ms. Thompson would, in fact, remember that the caller did identify himself as calling from Resurgent or Capital Investments. *Id.* at 163.

12. When asked if she had any personal knowledge one way or the other leading her to believe the recording in this case is not the actual telephone call in dispute, she responded "Well, sir, I'll just tell you that I'm just going on what I heard." *Id.* at 146.

## Testimony of Corporate Representative of Resurgent Capital Services

1. The call to Ms. Thompson was originated by the Resurgent Customer Service Department. (Exhibit 2, Deposition of Resurgent's corporate Representative, Tonya Henderson, p. 21). Resurgent records every conversation between a consumer and a Resurgent agent. *Id.* at 26.

2. Resurgent uses a system called SoundBite to initiate these calls. SoundBite is an external vendor used by Resurgent. The Resurgent dispute workflow system uses SoundBite to initiate calls to consumers who have disputed

a debt. *Id.* at 29. All telephone calls from the Customer Service Department go through SoundBite.

3. Once the consumer answers a SoundBite call, he or she is presented various prompts. Once the consumer has gone through the prompts, he or she is connected to a live operator at Resurgent. *Id.* at 30-31.

4. The prompts are used on every call per Resurgent's system with SoundBite. *Id.* at 33-34. Each consumer is required to go through the system prompts. They cannot be bypassed. While you can hang up, or simply let the call go to your answering machine, in order to reach a live operator, you must go through each prompt. *Id.* at 37-38.

5. When answering the phone, the first thing a consumer hears is a recorded disclosure that the call is from Resurgent Capital Services regarding a dispute. *Id.* at 39. At that point, a series of personal identifying questions are presented. *Id.* at 39-40. At the conclusion of these questions, a specific disclosure is played:

> This is Resurgent Capital Services calling about your dispute. We would like to give you the opportunity to resolve your account dispute with a customer service representative. For your reference, this communication is from a debt collector and is an attempt to collect a debt. Any information will be used for that purpose.

*Id.* at 40-42. It is impossible to bypass the prompts so that you do not have to listen to this disclosure. *Id.* at 166.

6. The recipient does not have to provide personal identification information to be transferred. If the recipient declines to participate in the authentication process, SoundBite will advise the Resurgent collector that authentication failed and provide the account number to facilitate the dispute resolution process. SoundBite plays the account number and authentication status for the Resurgent agent (obviously) afte the call is transferred. For this reason, the status of authentication and account number are part of the recorded call. *Id.* at 41-42, 160-162.

7. Before Ms. Thompson could speak to a live collector at Resurgent, she would need to go through all of the SoundBite steps. *Id.* at 163. It is not possible to bypass the SoundBite prompts in order to speak directly to a collector.

8. The amount of time it takes to go through the SoundBite system varies. It depends on which options the consumer selects and how they enter information. The amount of time on hold will also vary. *Id.* at 169-170.

9. Resurgent does not record via SoundBite. The prompts and disclosures given to the recipient are not recorded. The recording starts only once the call is transferred to and answered by an agent. *Id.* at 26-28.

10. A transcript of the recorded call was played to Resurgent's corporate deponent during her deposition. The entire transcript of the recorded call is as follows:

SPEAKER: Failed authentication. Account number 479225420. Press one to connect. Sound byte failed authentication.

COLLECTOR: Thank you for holding for customer service. This is Aaron. We are calling today to help you resolve your dispute. Who am I speaking with?

THOMPSON: Frances McIntyre.

COLLECTOR: And the last four digits of your Social.

THOMPSON: I don't know whether, oh, 1079.

COLLECTOR: Pardon me? Okay. 1079? Ma'am?

THOMPSON: Yes.

COLLECTOR: Okay. You said 1079, correct?

THOMPSON: Yes.

COLLECTOR: Okay. And a current mailing address?

THOMPSON: Uh, what is this all about?

COLLECTOR: Okay. All right. This is about a, let's see here, a First USA Master Card –

THOMPSON: Go ahead.

COLLECTOR: -- that's currently in dispute. Uh, it has a balance of $4,283.45.

THOMPSON: Okay.

COLLECTOR: We're -- we're calling you to help you resolve this issue.

THOMPSON: Well, there's no way that you could help me resolve this issue. That's a 14-year-old debt. It's from 1998.

COLLECTOR: Okay.

THOMPSON: I don't know whether you're aware of that.

COLLECTOR: Let's see here. Yes, it is, it is, it is old. It was sold into collections on April 2nd, 1999. Uh, let's see here, and the account is, let's see, not being reported to your credit report. Okay? It's not being reported at all, okay?

THOMPSON: It's being charged – it was charged off because I became disabled.

COLLECTOR: Okay. Um, so do you have any, let's see here, so the company sold it into collections when you became disabled?

THOMPSON: No, it was never turned over to the collection agency. They told me all I had to do was send them a copy. First USA, uh, said I could send a copy of my disability papers so that the account would be charged off, and that was when you said '98, I -- '99, I thought it was '98.

COLLECTOR: Yeah, charge off means they wrote the account off and sold it in the collections as a bad debt.

THOMPSON: Well, see, I, this is, you, I, I don't understand why this, no, it was even, even if that was what it was, nobody has contacted me until now, and like you said, this is 1999 and the debt was charged off making it that I was no longer responsible.

COLLECTOR: Okay.

THOMPSON: And if someone else had taken the debt, why is it that this is 2014, 2012, and someone just, no, uh-uh. That, I checked into that once before, and it, the statute of limitations is up on that, on that deal.

COLLECTOR: Yes. You are correct. The statute of limitations, it is out of statute since 2004, but even though it's out of statute, it's still a collectible debt, and I do wanna let know that, okay?

THOMPSON: No, because I have spoken to a lawyer about that, and I am not responsible for the debt from 14 years ago.

COLLECTOR: Okay. Do you have an attorney --

THOMPSON: Statute of limitations, so you, the statute of limitations for you to recover was, it ended in 2004.

COLLECTOR: Yes. Do you have an attorney?

THOMPSON: Yes.

COLLECTOR: What's his name?
THOMPSON: I'm not gonna give you my attorney's name.

COLLECTOR: Okay.

THOMPSON: And I mean, like I said, you did receive a certified letter, did you not?

COLLECTOR: Let me check and see.

THOMPSON: Cause this is the first time I've heard about this -- from you. You like the third, somebody has taken over this --

COLLECTOR: Yes, I'm showing --

THOMPSON: Pardon me?

COLLECTOR: Yes. I am showing a certified letter.

THOMPSON: Uh-huh.

COLLECTOR: Okay. Okay. Okay. Well, do you have any other questions for me about this are process, ma'am?

THOMPSON: About what?

COLLECTOR: Do you have any other questions for me about this dispute process?

THOMPSON: No. Because when it, I'd like to next time you contact me, if you contact me again, would you please put it in writing so that I can forward it to my attorney?

COLLECTOR: Yes. I've notated everything we spoke about, okay? Do you have any other questions for me?

THOMPSON: No. I don't have any questions.

COLLECTOR: Okay. Thank you for calling. Thank you for allowing me to assist you today, okay, ma'am?
THOMPSON: Thank you.

(End of Call)

*Id.* at 137-142.[2]

11. The recorded telephone call is kept and maintained by Resurgent. The recording produced in this case is the entirety of the conversation between the Resurgent customer service representative and the Plaintiff. It has not been edited or altered in any way. *Id.* at 164-165.

12. Customer service employees at Resurgent receive training in the FDCPA and the FCRA. They are trained on Resurgent's dispute process and how calls work through SoundBite. These employees know all of their calls are recorded. They are trained how to take notes and receive some training or

---

[2] A CD of the recording is attached to this motion as Exhibit 3.

jurisdictional issues. *Id.* at 56. They are trained not to threaten to do things Resurgent cannot legally do. The employees in inbound customer service do not have the ability actually to credit report any file. *Id.* at 59-60.

13. These employees are trained not to lie to the consumer, not to threaten actions they are incapable of doing, and not to misrepresent the debt. *Id.* at 62.

14. The employees in the dispute customer service department cannot tell a consumer that an out-of-statute debt will be credit reported. *Id.* at 69.

15. The collector who spoke to Ms. Thompson is named Aaron Dargis. During his course of employment with Resurgent, there were no complaints filed against him regarding his handling of a collection call. *Id.* at 79-80. There was an event where co-workers found his behavior to be unusually social and perhaps related to alcohol consumption. *Id.* at 78-80. Ultimately, he was terminated for poor attendance. *Id.* at 80. During the course of his employment, Mr. Dargis received monthly coaching to maintain minimum quality ratings. For example, a ninety-three percent average in quality is required but Mr. Dargis was at 91.88%. This coaching took place through May to July, 2012, after the call at issue in this lawsuit. *Id.* at 84.

16. Mr. Dargis never had his collection license revoked or suspended. *Id.* at 89.

17. PYOD does not reserve the right to control Resurgent in the collection of assigned accounts. PYOD has not reserved the right to control Resurgent nor does it have actual control over Resurgent's collection activities. *Id.* at 173.

### Testimony of SoundBite Representative

1. Resurgent's data and testimony regarding the recording and SoundBite disclosures is matched by SoundBite's records. On March 19, 2012, SoundBite initiated a telephone call to Ms. Thompson at telephone number 1-205-923-0067. (Affidavit of Tom Gregory, attached as Exhibit 5).

2. SoundBite will not connect the caller to Resurgent until specific prompts have been followed. These prompts ask the call recipient to press certain keys to confirm their identity, but the recipient is not obligated to do so. Regardless of whether the call recipient confirms his or her identity, the call will eventually be referred to Resurgent. *Id.*

3. However, before any transfer, a final prompt is triggered which provides a specific disclosure:

> This is Resurgent Capital Services calling about your dispute. We would like to give you the opportunity to resolve your account dispute with a customer services representative. For your reference, this communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

*Id.* Because of the script Resurgent uses, it is not possible for the call to be connected to Resurgent before this disclosure plays. *Id.*

4.  If the SoundBite system is working, this disclosure is played before the call is connected. Also, the Resurgent collector receives notice from SoundBite regarding the result of the authentication process, and the account number at issue. In this case, the Resurgent employee would be told the authentication process failed as Ms. Thompson did not enter the prompts confirming her identity. The Resurgent employee would also hear the account number. *Id.*

5.  The SoundBite system was in operation and working properly during the call to Ms. Thompson. The first 121 seconds of the telephone call were spent addressing the SoundBite prompts, in transfer, and on hold. The remaining call time took place after transfer to Resurgent. *Id.*

### Testimony of PYOD Corporate Representative

1.  PYOD is an asset holding entity. It is owned by a company, Sherman Originator, that purchases defaulted debt. Sherman then transfers ownership of the debt to PYOD. PYOD does not directly purchase accounts. (Exhibit 4, Deposition of Jean Paul Torres, Corporate Representative of PYOD, pp. 6-7).

2.  Though PYOD has ownership of the debt, the documents supporting the debt are managed by Resurgent Capital Services. *Id.* at 8-9.

3.   PYOD did nothing to collect the debt from Ms. Thompson directly. PYOD simply transferred the debt to Resurgent Capital Services. Resurgent then managed the account on behalf of PYOD. *Id.* at 23.

## CONCLUSION

PYOD is nothing more than the holder of this debt. It never contacted the plaintiff, didn't hire the agent she spoke to, and didn't reserve the right to control Resurgent, the company that attempted to liquidate the debt. Without evidence PYOD interacted with Ms. Thompson, no direct claim against it can survive. Without evidence to show Resurgent is the agent of PYOD, it cannot be vicariously responsible for any act or omission of Resurgent. PYOD is due to be dismissed from every count.

So, too, is Resurgent. Plaintiff has four claims, each based on the threat of credit reporting, and the failure to give the mini-miranda warning. The first claim, that she was threatened, is demonstrably false. This court is not required to ignore objective recordings in favor of plaintiff's subjective recollection. To the contrary, the allegations of the plaintiff cannot defeat a summary judgment supported by objective, uncontroverted evidence. No claim based on the credit reporting threat can survive summary judgment.

That means plaintiff's FDCPA claim, invasion of privacy claim, negligent hiring claim, and general negligence claim, must rise or fall based on the failure to

give the mini-miranda. As for the invasion count, if the disclosure was not played, it would still not amount to the type of outrageous and unreasonable conduct prohibited by Alabama common law. There is no series of harassment nor pattern of intentional abuse. She simply didn't get a disclosure (allegedly). That is not enough to provoke outrage in a person of normal sensibilities and the invasion claim is due to fail.

The same is true for the negligent hiring claim. The agent in question had no history of the same, or similar, conduct that would put an employer on notice that he was likely to harass or abuse Ms. Thompson by not giving the mini-miranda. Without notice, there can be no liability. But, as importantly, this agent isn't charged with giving the warning regardless. That is not part of his job, so the failure to do it cannot constitute negligence in his hiring and training. The warning is part of an automated system. If that system failed, Resurgent may be responsible for the failure, but it would have nothing to do with the performance of this agent.

The FDCPA is not a standard of care. Failing to give a required disclosure – especially one that causes no harm – may violate the FDCPA but does not simultaneously violate Alabama common law. There simply is no duty to give this warning and, as such, failing to do so is not actionable in negligence. Nor is it

wantonness, as there can be no reckless indifference where there is no underlying duty.

Finally, all of the above is academic because the disclosure was given. The objective testimony of Resurgent and its account representative show the SoundBite system was fully operational during Ms. Thompson's call. That is why the call time is longer than the recording: she spent the first part of the call going through the SoundBite prompts. That is why the recording begins with the SoundBite authentication notice – because the system was working. That is why the notes from the call exist in SoundBite to begin with. It is also why the agent, when the call is transferred to him, thanks the listener for holding and asks who he is speaking to. He didn't dial the call. It went through SoundBite and the testimony in this case shows the system, including the mini-miranda, cannot be bypassed.

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request this Honorable Court to grant summary judgment in their favor as to each count in the complaint as there is no genuine issue of material fact and the defendants are entitled to a judgment as a matter of law.

Respectfully submitted,

/s/ Neal D. Moore
Neal D. Moore, III
*Attorney for Defendants,*
Resurgent Capital Services, LP
and PYOD, LLC

OF COUNSEL:
Ferguson, Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205)879-8722

## CERTIFICATE OF SERVICE

This is to certify that on this the 18th day of November, 2013, a copy of the forgoing document has been served upon counsel for all parties to this proceeding via electronic filing:

John G. Watts
M. Stan Herring
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
john@wattsherring.com
stan@wattsherring.com

/s/ Neal D. Moore, III
OF COUNSEL