

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| FRANCES McINTYRE THOMPSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number: |
| ) | 2:12-cv-01018-JEO |
| RESURGENT CAPITAL SERVICES, ) | |
| L.P., and PYOD, L.L.C., ) | |
| ) | |
|     Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

This case arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

("FDCPA" or "Act") and Alabama state law.  Filed by Plaintiff Frances McIntyre Thompson

("Thompson" or "Plaintiff"), through counsel, the action comes to be heard before the

undersigned after the parties consented to magistrate judge jurisdiction, *see* 28 U.S.C. § 636(c),

FED. R. CIV. P. 73(a), on two motions filed jointly by the defendants, Resurgent Capital Services,

L.P. ("Resurgent") and PYOD, L.L.C. ("PYOD") (collectively "Defendants").  The first motion

seeks summary judgment on all claims.  (Doc.[1] 39).  The second is an associated motion to strike,

directed at certain FDCPA claims or theories argued within Plaintiff's response in opposition to

summary judgment.  (Doc. 44).  Upon consideration, the court finds that both of Defendants'

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of
the Court to the pleadings, motions, and other materials in the court file, as reflected on the
docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.  Pinpoint
citations are generally to the page of the electronically filed document, which may not correspond
to pagination on the original "hard copy."  However, pinpoint citations to deposition testimony
are to the page of the deposition transcript.

motions be granted in part and denied in part.

## I.    SUMMARY JUDGMENT STANDARDS

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, a party is authorized to move for summary judgment on all or part of a claim asserted against the movant.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. PROC. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.  Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PROC. 56(c)(1)(A), (B).  In its review of the evidence, a court view the evidence in the light most favorable to the non-movant. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

2

II.    **BACKGROUND**

According to the complaint, Plaintiff incurred a consumer debt that went into default in 1998 or 1999.  (Doc. 1 ("Complaint" or "Compl.") ¶¶ 9, 12).  Plaintiff asserts that Defendants Resurgent and PYOD are both debt collectors who are part of a related set of companies and that they operated as agents for each other at all times relevant.  (Compl. ¶¶ 4-8, 60).  She further claims that Defendants are "targeting consumers ... in an attempt to illegally force them into paying debts that are either not owed or are well beyond the statute of limitations."  (*Id.* ¶ 13).  Plaintiff says she was so targeted when she "started receiving calls and letters from the Defendants or from collection agencies for the Defendants" (*id.* ¶ 11), and that,"on or about March 19, 2012," an agent or employee of Resurgent, called Plaintiff about the debt in question, associated with a First USA MasterCard account.  (*Id.* ¶ 14).  Plaintiff says, she advised Defendants that the debt had been "charged off" in 1998 or 1999 and "that she had been contacted by a number of companies over the years about this debt and that she had written letters before about [it]."  (*Id.* ¶¶ 15, 18).  Plaintiff asserts that, although Defendants admitted the statute of limitations on the debt had run in 2004, Defendants "were not concerned about her letters" and told her that she "still had to pay this debt" and "threatened to put this debt on [her] credit report if she did not pay."  (Compl. ¶¶ 16, 17, 19, 20).  Plaintiff claims, however, that she "does not owe any money to Defendants" (*id.* ¶ 10) and that they were aware not only that the limitations period had expired but also and that the last date to legally credit report the debt was in 2005 or 2006.  (*Id.* ¶¶ 16, 22-23).  Plaintiff claimed that Defendants knowingly violated the FDCPA when they threatened to put the stale debt on her credit report in 2012 and that Defendants made such threat to "harass, annoy, abuse, or oppress Plaintiff, so that [she] pays the

3

debt." (*Id.* ¶¶ 24-26).  Plaintiff also asserts that "Defendants have refused to give all required

disclosures under the FDCPA when communicating with [her]." (*Id.* ¶ 59).

Based on these allegations, Plaintiff claims that "all of the above described collection

communications" violated a host of enumerated statutory sections of the FDCPA for which both

Defendants are liable, "including, but not limited to the following: [15 U.S.C. §§] 1692d, 1692e,

1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, and 1692f(1)," (Compl. ¶¶ 61, 62,

77; *id.*, Count I).  She further claims that, based on their "repeated attempts to collect this debt

from Plaintiff and refusal to stop violating the law," Defendants are liable under Alabama law for

invasion of privacy.  (Compl. ¶ 66; *id.*, Count II).  Finally, Plaintiff asserts that Defendants

engaged in "negligent, wanton, and/or intentional [mis]conduct," both as it relates to hiring,

training, and supervising employees (*id.*, Count III) and in attempting to collecting the debt itself.

(*Id.*, Count IV).

Following discovery, Defendants have moved for summary judgment on all counts.

(Doc. 39).  That motion has been fully briefed (Docs. 39, 40, 41, 45), and the parties have filed

evidence in support of their respective positions.  (Docs. 39-1 through 39-5; Doc. 42).  In

addition, Defendants have filed a motion to strike that is directed at certain allegations and

arguments in Plaintiff's response in opposition to summary judgment, which Defendants

characterize as an improper attempt by Plaintiff to raise new, unpled claims under the FDCPA.

(Doc. 44).  Plaintiff has opposed that motion.  (Doc. 46).

## III.    DISCUSSION

### A.      FDCPA Claims

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive,

and unfair debt collection practices." *Marx v. General Revenue Corp.*, ___ U.S. ___, ___ n.1,

133 S. Ct. 1166, n.1 (2013) (citing 15 U.S.C. § 1692).

> The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects ... debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).  Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence or the threat thereof, §§ 1692d(1), (2). *See* generally §§ 1692b–1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293 (1995).

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010).

The FDCPA prohibits debt collectors from making statements and engaging in conduct

that is "deceptive," "misleading," "unconscionable," or "unfair," 15 U.S.C. §§ 1692e, 1692f, as

viewed from the perspective of the "least sophisticated consumer."  *Crawford v. LVNV Funding,*

*LLC*,  758 F.3d 1254, 1258 (11th Cir. 2014) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d

1185, 1193-94, 1200-01 (11th Cir. 2010)).  The "basic purpose of the 'least-sophisticated

consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as

the shrewd." *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd

Cir. 1993)).  The Eleventh Circuit has explained the contours of that liberal standard thus:

> That law was not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous and [t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.  There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business.  Laws are made to protect the trusting as well as the suspicious.
>
> * * *
>
> [However], [t]he least sophisticated consumer can be presumed to possess

5

a rudimentary amount of information about the world and a willingness to read a collection notice with some care.  However, the test has an objective component in that [w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

*LeBlanc*, 601 F.3d at 1194 (quotation marks and citations omitted).

"To enforce the FDCPA's prohibitions, Congress equipped consumer debtors with a private right of action, rendering "debt collectors who violate the Act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs." *Crawford*, 758 F.3d at 1257 (quoting *Owen*, 629 F.3d at 1270 (citing 15 U.S.C. § 1692k(a))).  "In order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Graveling v. BankUnited, NA*, 970 F. Supp. 2d 1243, 1255 (N.D. Ala. 2013) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000) (quoting, in turn, *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 470 (M.D. La. 1995))).

### 1.       FDCPA Claims that Defendants Admit are Pled

As further discussed, the parties are at odds over just what FDCPA claims and theories Plaintiff has pled in the Complaint.  However, Defendants acknowledge that Plaintiff has properly pled two particular discrete theories of FDCPA liability, both of which arise out of the collection call Plaintiff received on March 19, 2012.  First, Defendants concede that Plaintiff has raised a claim alleging that the agent on that call made an explicit threat to report the debt in question to a credit bureau for the purpose of having the account appear on Plaintiff's credit report.  And second, Defendants admit that Plaintiff has raised what is often called a "mini-

6

*Miranda*" claim, based on an allegation that the call failed to include a required disclosure that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."  15 U.S.C. § 1692e(11); *see Leahey v. Franklin Collection Service, Inc.*, 756 F. Supp. 2d 1322, 1325 (N.D. Ala. 2010); *see also generally Miranda v. Arizona*, 384 U.S. 436 (1966).  Given that it is undisputed that these two claims are properly in the litigation at this point, the undersigned will address them first.

### a.      Threat to Credit Report the Debt on the Call

Plaintiff has claimed that, during the call on March 19, 2012, an agent employed by Resurgent seeking to collect on a First USA Master Card debt, explicitly threatened that, if Plaintiff failed to pay, the debt would be reported to a credit agency.  Defendants concede that if, in fact, the agent made such a threat, it would be a violation of the FDCPA (Doc. 40 at 15), because the debt could no longer be lawfully reported by a credit agency under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.  *See* 15 U.S.C. § 1681c(a)(4); *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1062-63 (9th Cir. 2011); *Slick v. Portfolio Recovery Associates, LLC*, 2014 WL 4100416, at *5-7 (N.D. Ill. Aug. 20, 2014).

At her deposition in September 2013, Plaintiff testified that she answered the phone call; said, "hello"; and began speaking immediately with a customer service agent who told her he was calling about the First USA MasterCard debt.  (Pl. Dep. at 113-14, 119-20).  And on that call, Plaintiff insists, the agent threatened to credit report the debt if she did not pay.  (*Id.* at 113-14).  Plaintiff "guess[ed]" that her conversation with the agent lasted "around five minutes," while acknowledging "it could have been shorter."  (*Id.* at 114).  After she hung up, she immediately called the office of her attorney and spoke with a representative there.  (*Id.* at 129-30).  Following

that discussion, she says, she went wrote down what she remembered to have been said on the

collection call, including that the agent had threatened to credit report the account, as follows:

> 3-19-12
>
> Call came in from Capital Investments, a debt collection agency.  The subject was
> a debt was for a bill from the year of [19]98.  He wanted to know what kind of
> arrangements I wanted to make to [settlement? (sic)] this debt.  I wanted to know
> what debt.  He said a bill from USA from 1999.  I said this bill was charged [o]ff
> ... in that same year.  I said was charged off because I became disable[d].  He said
> the statute of limitation was up in the year of 2004 but the bill was still mine and
> they had a right to recover.  I informed him that they were about the 4th company
> to contact me.  I asked him did they receive a letter from me.  He said he did but I
> need [to] make arrangements about this bill.  *He said if this bill was not paid it
> would be turned over and reported on my credit record.*  I informed him not to
> call me any more if he wanted to contact me ~~write me~~ [crossed out] and again.  Do
> not call me again.  He said do you have a lawyer[?]  I said yes.  So when you want
> [to] contact me, everything would be turned over to my lawyer.  He said I was still
> liable for this debt.  I said again do not call me again.
>
> Frances Thompson

(Doc. 42-12 (emphasis added)).

The parties dispute, however, whether, the court must now assume for purposes of

summary judgment the truth of Plaintiff's testimony that the agent threatened to credit report the

debt.  In most cases, of course, the court would have to do so.  The Eleventh Circuit has

explained:

> When considering a motion for summary judgment, ... "courts must construe the
> facts and draw all inferences in the light most favorable to the nonmoving party
> and when conflicts arise between the facts evidenced by the parties, [they must]
> credit the nonmoving party's version."  *Davis* [*v. Williams*, 451 F.3d 759, 763
> (11th Cir. 2006)] (quotation marks and emphasis omitted).  Even if a district court
> "believes that the evidence presented by one side is of doubtful veracity, it is not
> proper to grant summary judgment on the basis of credibility choices."  *Miller v.
> Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).  This is because credibility
> determinations and the weighing of evidence "are jury functions, not those of a
> judge."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).  While acknowledging this general rule, Defendants maintain that it does not apply here.  Defendants contend that is so because there exists an audio recording of the telephone conversation between Plaintiff and the collection agent.  And that recording, Defendants say, contradicts Plaintiff's account of what occurred on the call such that her testimony is due to be rejected as a matter of law.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Feliciano*, 707 F.3d at 1253 (indicating that a plaintiff's testimony may be discounted on summary judgment where "it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."); *cf. Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.").

In *Scott*, for example, the Supreme Court held that it was appropriate to reject certain testimony offered by the plaintiff in support of his § 1983 claim alleging excessive force, where his version of events was "utterly discredited" by the depiction on a police videotape.  550 U.S. at 380-81; *see also Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009).  The same principle also applies where an audio recording unambiguously contradicts a witness's testimony regarding the substance of a conversation or given verbal statements.  *See Masson v. New Yorker Magazine,*

*Inc.*, 501 U.S. 496, 520 (1991) (recognizing in a defamation action that, at summary judgment, the Court had to assume the truth of the plaintiff's testimony denying that he made certain statements attributed to him by the defendant, "except where otherwise evidenced by ... tape recordings" of the interviews in which all relevant statements would have been made); *Coble v. City of White House*, 634 F.3d 865, 868-69 (6th Cir. 2011); *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012); *see also United States v. Alston*, 895 F.2d 1362, 1368 n.6 (11th Cir. 1990); *Nash v. Estelle*, 597 F.2d 513, 519 (5th Cir. 1979)[2] (en banc); *NLRB v. Tex-Tan, Inc.*, 318 F.2d 472, 484 (5th Cir. 1963) ("[T]here could hardly be better proof of words spoken than an electronic tape recording properly identified and authenticated.").

The undersigned has listed to the audio recording of the March 19, 2012, telephone conversation between the collection agent and Plaintiff, which on a compact disc included in the record as Exhibit 3 to Defendants' Motion for Summary Judgment.   Also, during the deposition of Resurgent's FED. R. CIV. P. 30(b) corporate representative, Tonya Henderson, the recording was played and transcribed.  (Doc. 39-2 ("Henderson Dep.") at 137-42).   The conversation is set out in its entirety below, as heard by the undersigned on the audio recording, which reflects some minute variations from the deposition:

> [Automated female recorded voice] SPEAKER:  Failed authentication.  Account number 479225420.  Press one to connect.  SoundBite failed authentication.
>
> COLLECTOR:  Thank you for holding for customer service.  This is Aaron.  We are calling today to help you resolve your dispute.  Who am I speaking with?
>
> THOMPSON:  Frances McIntyre.

---

[2]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

COLLECTOR:  And the last four digits of your Social.

THOMPSON:  I don't know whether, oh, 1079.

COLLECTOR:  Pardon me?  Okay.  1079?  Ma'am?

THOMPSON:  Yes.

COLLECTOR:  Okay.  You said 1079, correct?

THOMPSON:  Yes.

COLLECTOR:  Okay.  And a current mailing address?

THOMPSON:  Uh, what is this all about?

COLLECTOR:  Okay.  All right.  This is about a, let's see here, a First USA MasterCard -

THOMPSON:  Go ahead.

COLLECTOR:   -- that's currently in dispute.  Uh, it has a balance of $4,283.45.

THOMPSON:  Okay.

COLLECTOR:  We're -- we're calling you to help you resolve this issue.

THOMPSON:  Well, there's no way that you could help me resolve this issue.  That's a 14-year-old debt.  It's from 1998.

COLLECTOR:  Okay.

THOMPSON:  I don't know whether you're aware of that.

COLLECTOR:  Let's see here.  Yes, it is, it is, it is old.  It was sold into collections on April 2nd, 1999.  Uh, let's see here, and the account is, let's see, not being reported to your credit report.  Okay?  It's not being reported at all, okay?

THOMPSON:  It's being charged - it was charged off because I became disabled.

COLLECTOR:  Okay.  Um, so do you have any, let's see here, so the company sold it into collections when you became disabled?

THOMPSON:  No, it was never turned over to the collection agency.  They told me all I had to do was send them a copy.  First USA, uh, said I could send them a copy of my disability papers so that the account would be charged off, and that was when you said '98, I -- '99, I thought it was '98.

COLLECTOR:  Yeah, charge off means they wrote the account off and sold it into collections as a bad debt.

THOMPSON:  Well, see, I, this is, you, I, I don't understand why this, no, it was even, even if that was what it was, nobody has contacted me until now, and like you said, this is 1999 and the debt was charged off making it that I was no longer responsible.

COLLECTOR:  Okay.

THOMPSON:  And if someone else had taken the debt, why is it that this is 2014, 2012, and someone just, no, uh-uh.  That, I checked into that once before, and it, the statute of limitations is up on that, on that deal.

COLLECTOR:  Yes. You are correct.  The statute of limitations, it is out of statute since 2004, but even though it's out of statute, it's still a collectible debt, and I do want to let you know that, okay?

THOMPSON:  No, because I have spoken to a lawyer about that, and I am not responsible for a debt from 14 years ago.

COLLECTOR:  Okay.  Do you have an attorney --

THOMPSON:  Statute of limitations, so you, the statute of limitations for you to recover was, it ended in 2004.

COLLECTOR:  Yes.  Do you have an attorney?

THOMPSON:  Yes.

COLLECTOR:  What's his name?

THOMPSON:  I'm not gonna give you my attorney's name.

COLLECTOR:  Okay.

THOMPSON:  And I mean, like I said, you did receive a certified letter, did you not?

COLLECTOR:  Let me check and see.

THOMPSON:  Cause this is the first time I've heard about this -- from you.  You like the third, somebody has taken over this --

COLLECTOR:  Yes, I'm showing --

THOMPSON:  Pardon me?

COLLECTOR:  Yes.  I am showing a certified letter.

THOMPSON:  Uh-huh.

COLLECTOR:  Okay.  Okay.  Okay.  Well, do you have any other questions for me about this dispute process, ma'am?

THOMPSON:  About what?

COLLECTOR:  Do you have any other questions for me about the dispute process?

THOMPSON:  No.  Because when it, I'd like to next time you contact me, if you contact me again, would you please put it in writing so that I can forward it to my attorney?

COLLECTOR:  Yes.  I've noted everything we spoke about that, okay?  Do you have any other questions for me?

THOMPSON:  No.  I don't have any questions.

COLLECTOR:  Okay.  Thank you for calling.  Thank you for allowing me to assist you today, okay, ma'am?

THOMPSON:  Thank you.

(End of Call)

Plaintiff does not contest the admissibility of this recording for purposes of summary judgment, and she now concedes that it does not reflect that the collection agent threatened to report the debt to a credit agency.  Indeed, the recording shows that while the agent did make a

reference to credit reporting, he did so only in advising Plaintiff that the debt was *not* being reported to her credit report.  (Henderson Dep. at 139 ("COLLECTOR:  Let's see here.  Yes, it is, it is, it is old.  It was sold into collections on April 2nd, 1999.  Uh, let's see here, and *the account is, let's see, not being reported to your credit report.  Okay?  It's not being reported at all, okay*?" (emphasis added)).  Therefore, taken on its face, the audio recording blatantly contradicts Plaintiff's claim that the agent threatened to credit report the debt.

Plaintiff insists, however, that a jury could still reasonably believe her testimony that the agent did make such a threat at some other point on the call because the record supports that about two minutes of the call was not captured on the audio recording.  In particular, Plaintiff relies upon a call data report generated by SoundBite Communications ("SoundBite"), an external vendor that Resurgent employs to initiate automated debt collection calls on its behalf.  (*See* Doc. 39-5, Affidavit of Tom Gregory ("Gregory Aff.")), at 5-12; Henderson Dep. at 25-30).  SoundBite uses an automated system that automatically collects and stores certain information about SoundBite-initated calls that are answered on the consumer's end.  (Gregory Aff. ¶¶ 1-7; Henderson Dep. at 25-30).  That system created a call data report showing that the call on March 19, 2012, was connected for a total of 417 seconds, or three seconds under seven minutes.  (*See* Gregory Aff. ¶¶ 1-2; Doc. 39-5 at 9).  By contrast, the audio recording is just five minutes and ten seconds long.  Of that, the introductory section where the recorded voice references a "failed authentication" lasts approximately 15 seconds, and there is perhaps a second or two of audio after Plaintiff seems to hang up, leaving Plaintiff and the agent connected and conversing for a few seconds shy of five minutes.  Plaintiff argues that, because about two minutes of the call was not recorded, her case is like those in which courts have declined to reject a plaintiff's testimony

as a matter of law under *Scott* because a video or audio recording did not completely and

unambiguously depict all material events.  *See, e.g., Pourmoghani-Esfahani v. Gee*, 625 F.3d

1313, 1315 (11th Cir. 2010) (recognizing that a video recording was "not obviously

contradictory" of the plaintiff's testimony as to at least some facts because there was no

accompanying sound recording and the video "sometimes fail[ed] to provide an unobstructed

view of events").

Defendants reply that the SoundBite data report does show that the *call* was "active" for

about two minutes longer than the period Plaintiff was speaking with the Resurgent agent, as

documented by the audio recording.  Defendants maintain, however, that the recording does, in

fact, capture the entirety of the *conversation* between Plaintiff and the agent, which is when

Plaintiff alleges the threat to credit report the debt allegedly occurred.  Defendants rely on

Henderson, who has testified that the audio recording was created and maintained on Resurgent's

automated system, represents the whole conversation between the agent and Plaintiff, and has not

been altered or edited in any way.  (Henderson Dep. at 163-168, 174-77).  Defendants also argue

that, contrary to Plaintiff's assertion, the SoundBite call data report does not reasonably indicate

otherwise.  Indeed, Defendants maintain that the report, considered in its entirety, confirms,

rather than undercuts, that the audio recording encompasses the whole conversation.  Defendants

highlight that while the report shows a total active call time of 417 seconds, it also documents in

a separate field that Plaintiff was connected to a live agent at Resurgent for only 296 seconds

(Gregory Aff. ¶ 2; Doc. 39-5 at 10), which is consistent with the audio recording.  The remaining

121 seconds of the call, Defendants claim, are accounted for by the fact that the call originated on

the SoundBite system.  Specifically, Tom Gregory, SoundBite's representative on the Resurgent

account, says that the SoundBite call report documents that, of the 121 additional seconds, it took two seconds to transfer the call from SoundBite's system to Resurgent, plus an additional 44 seconds were spent "on hold" on Resurgent's system before the call was answered by the agent. (Gregory Aff. ¶¶ 3; Doc. 39-5 at 11).  Gregory further explains that the remaining 75 seconds, although not appearing in a field on the report, comprise the time that Plaintiff, upon initially answering the phone, would have been played a series of scripted recordings and automated prompts on the SoundBite system.  (Gregory Aff. ¶ 4).  In support of Defendants' position, Henderson testified that Resurgent creates an audio recording of a collection call initiated by SoundBite only from the point that the call is being transferred to a live agent in Resurgent's customer service department.  (Henderson Dep. at 26, 90). And both Henderson and Gregory insist that, with SoundBite's automated system, a consumer who answers a call cannot possibly be connected to a live agent at Resurgent without first going through these automated prompts and messages on the SoundBite system.  (Henderson Dep. at 31-45, 166-68; Gregory Aff. ¶¶ 4-6).

Plaintiff has testified, though, that when she answered the call in question she began speaking immediately with a live agent who told her the reason for the call, and she denies hearing any recordings or an automated voice.  (Pl. Dep. at 113-14, 119-120).  Plaintiff therefore argues that "whether the two minutes of missing conversation is the time spent on the part of the call Sound[B]ite handles or whether it was spent on the part of the call where Resurgent's employee threatened [Plaintiff] is a question of fact for the jury to decide[,] making summary judgment inappropriate" on this claim.  (Doc. 41 at 29).  The undersigned disagrees.  Plaintiff has presented no evidence directly contradicting Defendants' proffered testimony that the recording

encompasses the entire call conversation and that the recording has not been edited or tampered with.  Nor is there anything audible on the recording itself suggesting to the contrary.  Rather, it appears to capture the conversation from beginning to end, without any discernable gaps in the recording or in the parties' discussion.  Plaintiff offers generally that the recording is not how she recalls the conversation.  (Pl. Dep. at 143-45).  However, she also testified that the conversation lasted only about five minutes, perhaps less, which is consistent with both the recording and that aspect of the call report documenting a connection to an agent for 296 seconds.  Likewise, her deposition testimony and her written notes describing what allegedly was said on the call at least generally track the flow of the recorded discussion, with the notable exception that Plaintiff testifies that the agent threatened to have the account put on her credit report while the recording shows that the agent told Plaintiff that the account was *not* being reported to her credit report.  Those circumstances tend to corroborate that the recording captured the entire discussion and that Plaintiff's interpretation or memory of the agent's reference to credit reporting is simply incorrect, not, as Plaintiff suggests, that the recording completely missed some two additional minutes, or more than one-quarter, of their conversation.

Plaintiff observes that the Resurgent agent, in documenting the call in the account file, made a brief notation that included the following: "The account is off bureau, even if it's reported the Credit Bureaus will not place this line on the report."  (Doc. 42-4 at 3).  Plaintiff suggests that this note "contradicts" the recording.  (Doc. 41 at 9).  However, the statement that the "account is off bureau," *i.e.*, that the debt is not being reported on Plaintiff's credit report, is what the recording shows the agent told Plaintiff.  It is true that the recording does not reflect that the agent made the exact statement that "even if [the account] is reported the Credit Bureaus will

not place this line on the report."  Nonetheless, that circumstance is too slender a reed upon which to support a reasonable inference that the recording captures less than the whole call conversation.  The agent's entire notation is a few lines in an account file briefly addressing what occurred on the call.  It is plainly not intended to be any sort of formal or detailed description of what was said; that is what Resurgent uses the audio recording for.  More to the point, the agent's notation, that "even if [the account] is reported the Credit Bureaus will not place this line on the report," is still related to, and generally consistent with, his statement on the recording that "the account is, let's see, not being reported to your credit report.  Okay?  It's not being reported at all, okay?"  That is, both the recorded verbal statement and the file note acknowledge generally that the debt is *not* going on Plaintiff's credit report.  As such, the agent's file note does not materially aid Plaintiff's cause.

In the end, Plaintiff is resigned to claiming that a jury could infer that the recording does not capture her entire conversation with the agent based on the fact that the SoundBite call data report shows a total active call time of 417 seconds, or about two minutes longer than the recorded conversation.  However, that conveniently ignores that the same SoundBite report also reflects that the call was connected to a Resurgent agent for only 296 seconds, which is consistent with the recording.  Defendants' witnesses claim that the 121-second difference represents the period that Plaintiff was going through SoundBite's system of scripted recordings and prompts and when she was later waiting on hold before the agent answered.  Plaintiff disputes that, as her testimony is essentially that a live agent was on the other end of the line as soon as she picked up the phone and that their conversation was all that occurred on the call.  Even so, Plaintiff offers no explanation, and the undersigned appreciates none, for how a jury

18

might rationally credit the specific line of the SoundBite report stating that the call was active for a total of 417 seconds while simultaneously rejecting the line of the very same automated call data report reflecting that the call was connected to a live agent for 296 seconds.  Certainly a jury is generally entitled to credit or reject the testimony of even a single witness or a piece of evidence only in part.  *See Rixey v. West Paces Ferry Hosp., Inc.*, 916 F.2d 608, 616 (11th Cir. 1990).  However, a jury is still free to choose only among "the *reasonable* constructions of the evidence," *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014) (emphasis added), and "there comes a point where fragmentation becomes illogical."  *Sylvia v. United States*, 312 F.2d 145, 147 n.1 (1st Cir. 1963) (internal quotation marks and citation omitted); *see also Bhatnagar v. Ingrassia*, 438 F. App'x 550, 551 (9th Cir. 2011) ("A 'reasonable' factfinder could not have interpreted the evidence in the selective manner that [the plaintiff] urges by selectively crediting and discrediting his and [the defendant's] testimony to construct the single hybrid narrative that would have permitted Bhatnagar to survive the motion for judgment as a matter of law."); *United States v. Moore*, 108 F.3d 270, 273 n.4 (10th Cir. 1997) ("The principle that the jury is free to accept or reject part or all of the defense or prosecution's case .... has never been applied to countenance selective dissection of the integrated testimony of a single witness as to whom credibility, or incredibility, could only be a constant factor." (*quoting People v. Scarborough*, 402 N.E.2d 1127, 1132 (N.Y. 1980))); *Commonwealth v. Zanetti*, 910 N.E.2d 869, 876-77 (Mass. 2009) ("A jury cannot properly be permitted to wrest part from a clear and consistent context so as to attribute to a witness a statement which he did not make." (internal quotation marks and citation omitted)); *cf. Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc) (holding that, at summary judgment, a court has no duty to credit part of the nonmovant's

19

testimony and reject other parts in favor of testimony by other witnesses that would be more favorable to the nonmovant's case). And so it would be with Plaintiff's cherry-picking of the automated SoundBite call data. Plaintiff has failed to show that there is a genuine issue of fact with regard to whether the audio recording captures the entirety of her telephone conversation with the agent. *Cf. Brims v. Barlow*, 441 F. App'x 674, 677 (11th Cir. 2011) (holding that the plaintiff did not create an issue of fact regarding the accuracy of a police videotape based on an alleged discrepancy between the time display on the video and the time that the underlying traffic stop purportedly occurred). And because the recording is due to be credited and blatantly contradicts Plaintiff's testimony that the agent made a threat on the call to report the debt to a credit agency, Defendants are entitled to summary judgment on Plaintiff's FDCPA claim based on that theory.

### b.    The Mini-*Miranda* Claim

Plaintiff also contends that Defendants are liable because the collection call allegedly did not include a mini-*Miranda* disclosure. Again, Defendants concede both that Plaintiff has sufficiently pled this claim in the Complaint and that the FDCPA would be violated if the call did not include a required mini-*Miranda* disclosure. Defendants' further recognize, as they must, that the audio recording of the call does not show that Plaintiff received a mini-*Miranda* notice. Defendants' nonetheless contend that they are entitled to summary judgment on this claim because other "objective evidence" establishes that Plaintiff was played a mini-*Miranda* message on the SoundBite system before the call was transferred to Resurgent and Plaintiff was connected to speak with the customer service agent.

In particular, Defendants rely on the testimony of Henderson and Gregory as it relates to

the systems used by SoundBite to make and document calls to debtors on behalf of Resurgent, some of which has been discussed previously.  Henderson states that Resurgent's uses SoundBite to make all of its calls on accounts that Resurgent has deemed "disputed" by the consumer, which would include Plaintiff's.  (Henderson Dep. at 28-30).  Henderson and Gregory explain that, when a SoundBite call is answered on the consumer's end, SoundBite's automated system starts collecting call report data and begins playing a series of automated messages and prompts to the consumer.  (Gregory Aff.; Henderson Dep. at 30-42).  These are designed to confirm that the call has been answered by the correct consumer, to request that the consumer verify their identity by providing the last four digits of their Social Security number, and to trigger a recorded mini-*Miranda* disclosure.  (Gregory Aff. ¶¶ 1, 3-6; *see also* Henderson Dep. at 30-42, 162). Henderson and Gregory further state that, regardless of whether the consumer provides information to verify their identity, if the call remains connected for a certain length of time, the call will automatically be transferred to Resurgent's system, where it would eventually be picked up by a customer service agent.  (Gregory Aff. ¶¶ 2-5; Henderson Dep. at 31, 37-38).  They also both are adamant that, with SoundBite's automated system, a SoundBite call cannot possibly be connected directly to a live agent at Resurgent without the recipient first going through the scripted prompts and hearing a mini-*Miranda* message on SoundBite.  (Gregory Aff. ¶¶ 4-6; Henderson Dep. at 36-38, 44, 166-68)

Defendants also claim that the record evidence demonstrates that the particular call to Plaintiff on March 19, 2012, was initiated by SoundBite and that Plaintiff necessarily received a mini-*Miranda* message.  Both Henderson and Gregory maintain that SoundBite's system was functioning properly at the time of the call.  (Gregory Aff. ¶¶ 6-7; Henderson Dep. at 43-44, 166-

68).  Defendants also observe that SoundBite's system generated a call data report, as discussed previously.  Gregory has testified that report indicates that Plaintiff was connected on the SoundBite system for 75 seconds before being transferred to Resurgent, during which time, Gregory says, Plaintiff would have been played the prompts and a mini-*Miranda* disclosure. Gregory also adds that the existence of the call report is itself proof that SoundBite made the call and demonstrates that its automated systems were functioning properly.  (Gregory Aff. ¶ 7).

Finally, Defendants emphasize that, at the beginning of the audio recording, before Plaintiff or agent speaks, an automated female voice is heard to say, "Failed authentication"; then recite Plaintiff's Resurgent account identification number; followed by,"Press one to connect. Sound[Bite] failed authentication."  (Henderson Dep. at 137-38; *see also* Doc. 42-4 at 2). Henderson acknowledges that this message might have been heard only by the agent and not by Plaintiff.  (Henderson Dep. at 161).  Nonetheless, Defendants say, this excerpt further proves that the call came though SoundBite because the message mentions SoundBite and the language corresponds to SoundBite's script for Resurgent covering when a call has been answered on the consumer's end and the recipient has remained on the line without verifying their identity before the call is connected to a live agent at Resurgent.  Defendants also highlight that the first thing the agent says on the recording upon picking up the call is:  "Thank you for holding for customer service.  This is Aaron.  We are calling today to help you resolve your dispute.  Who am I speaking with?"  Defendants claim that such supports both that the agent did not initiate the call himself and that Plaintiff had been waiting on hold, which is consistent with the SoundBite report reflecting a hold time of 44 seconds before the call connected to an agent.

In the face of the above evidence offered by Defendants, however, is Plaintiff's

22

unambiguous testimony that she answered the phone and commenced speaking immediately with a live agent who told her the reason for the call and that she did not receive any automated messages.  Defendants argue that such testimony, like her claim that the agent threatened to credit report the debt, is incredible as a matter of law and thus cannot create an issue of fact.  But Plaintiff's particular testimony in this instance is not so blatantly contradicted by incontrovertible evidence that her testimony may be disregarded at summary judgment.  Admittedly, Defendants' evidence on the issue appears quite compelling.  Indeed, it might be assumed that the SoundBite call data report and the audio recording establish beyond any genuine dispute that the call was initiated by SoundBite.  Even so, the evidence that Defendants rely on to prove specifically that the SoundBite system played a mini-*Miranda* message before Plaintiff was connected to speak with the agent, *i.e.*, Henderson and Gregory's testimony that SoundBite's system is *automated* and *always* reliability records call data and *always* plays the prompts and messages, is circumstantial in nature and not akin to a conclusive video or audio recording to that effect.  *See Morton v. Kirkwood,* 707 F.3d 1276, 1284 (11th Cir. 2013); *Reeder v. Chitwood*, ___ F. App'x ___, ___, 2014 WL 6984431, at *5-6 (11th Cir. Dec. 11, 2014); *Hall v. Bennett*, 447 F. App'x 921, 923 (11th Cir. 2011); *Skelly v. Okaloosa County Bd. of County Com'rs*, 415 F. App'x 153, 155 (11th Cir. 2011).

Plaintiff was clearly in a position to hear whether she was played any automated messages on the call before speaking with the agent, and she has testified under oath that she received no such messages.  Defendants are therefore effectively asking the court to weigh her account of the call against the testimony of Henderson and Gregory as it relates to the operation and reliability of SoundBite's automated system.  A jury might certainly be impressed by the latter, particularly

insofar as it seems to dovetail both with the call report data and with the introductory portion of

the audio recording.  But Defendants are still inviting the court to assess credibility, which is

improper at summary judgment.  *See Foster v. Metropolitan Life Ins. Co.*, 243 F. App'x 208, 210

(9th Cir. 2007) (holding that plaintiff's testimony that he did not receive grace period notices

from defendant insurer had to be credited at summary judgment even though insurer's computer-

generated mail log indicated otherwise); *Willmore-Cochran v. Wal-Mart Assoc., Inc.*, 919 F.

Supp. 2d 1222, 1240 (N.D. Ala. 2013) ("[The defense witnesses'] denials, even if buttressed by

assertions that Wal-Mart's computer system made it impossible to change the schedule after the

fact or on the same day of a shift, are not so objectively overwhelming that they render Plaintiff's

testimony inherently incredible such that the court might disregard it at summary judgment.");

*Fini v. Dish Network, LLC*, 955 F. Supp. 2d 1288, 1293-94 (M.D. Fla. 2013) (testimony by

plaintiff and her husband regarding the number of phone calls they received from defendant was

not incredible as a matter of law, despite defendant's computer system records showing fewer

calls were made); *Moody v. FMS, Inc.*, 2014 WL 334801, at *4 (D. Colo. Jan. 30, 2014) ("FMS

may very well be correct in believing that the factfinder will likely find Mr. Moody's testimony

to be either mistaken or opportunistically-untrue, particularly when compared to FMS'

automatically-recorded logs showing no live conversations occurred.  But summary judgment is

not a time for this Court to make credibility determinations ...."); *Lashbrook v. Portfolio*

*Recovery Associates*, *LLC*, 2013 WL 4604281, at *9 & n.8 (E.D. Mich. Aug. 29, 2013) (holding

that plaintiff's testimony that defendant debt collector's representative made misleading

statements on a call in July 2011 was "sufficiently specific to show a genuine issue of fact,"

despite being uncorroborated by phone records or otherwise and that defendant's call log record

system showed no calls made to the plaintiff that month); *cf. Coleman v. Redmond Park Hosp.*, 589 F. App'x 436, 441 (11th Cir. 2014) ("Without the actual recording of the disputed voicemail, Coleman's claim depends on which version of the disputed voicemail a jury would believe."). Accordingly, Defendants are not entitled to summary judgment on this claim on the theory that the evidence establishes as a matter of law that Plaintiff received a mini-*Miranda* warning on the call.

### 2.       FDCPA Claims Challenged by Defendants' Motion to Strike

While not disputing that Plaintiff has pled the two claims discussed above, Defendants have moved to strike a host of other putative claims or theories that Plaintiff has argued in opposition to summary judgment as it relates to the FDCPA.  Defendants argue that Plaintiff cannot avoid summary judgment based on such other claims because, Defendants say, they have not been sufficiently pled in the Complaint.  It is well established that a "plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Rather, new claims must be added by a proper amendment to the complaint in accordance with FED. R. CIV. P.  15(a).  *Id.*  Plaintiff does not dispute that.  She contends, however, that Defendants' motion to strike is due to be denied because the Complaint, Plaintiff asserts, includes allegations sufficient to support all of the FDCPA theories she argues at summary judgment.

In this context, the court must determine whether an ostensibly  "new" claim argued in a summary judgment brief is sufficiently set forth in the Complaint, in light of applicable federal pleading standards.  *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 & n.27 (11th Cir. 2012); *Ivey v. First Quality Retail Service*, 490 F. App'x 281, 287 (11th Cir. 2012); *Champ*

*v. Calhoun County Emergency Mgmt. Agency*, 226 F. App'x 908, 912 n.3 (11th Cir. 2007).

FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [*Twombly*, 550 U.S. at 555] (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). With these standards in mind, the undersigned turns to consider the FDCPA claims or theories that are

26

the subject of Defendants' motion to strike.

### a.    Misrepresentations that Defendants Owned the Debt

Plaintiff first contends that a jury might find Defendants liable under the FDCPA on the ground that they misrepresented that she legally owned the debt.  (Doc. 41 at 25-27).  Plaintiff maintains that Defendants represented to her that PYOD owns the debt, but Defendants have failed to produce documentation showing every link in the chain of title from the original creditor, First USA.  (*Id.* at 26).  Plaintiff asserts that such circumstances show a violation of 15 U.S.C. § 1692e, which provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including specifically any "false representation of ... the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A)(2).  Defendants move to strike this claim, arguing that it does not appear in Plaintiff's pleading.  The undersigned agrees with Defendants.

The only material allegations of the Complaint potentially giving notice of this claim are as follows: (1) that "Plaintiff started receiving calls and letters from the Defendants or from collection agencies for the Defendants" (Compl. ¶ 11); (2) that "Plaintiff does not owe any money to Defendants" (*id.* ¶ 10); and (3) that "Defendants violated numerous sections of the FDCPA, including but not limited to: [15 U.S.C. §§] 1692d, *1692e*, *1692e(2)*, 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, and 1692f(1)."  (*Id.*, ¶ 62 (emphasis added); *see also id.* ¶ 77).  Plaintiff does not seriously dispute this; instead she contends that such allegations legally equate to having pled "that Defendants did not own the debt" (Doc. 46 at 6-7) and that one or both Defendants "mischaracterized the legal status of the debt (that it owned [the debt] and that [Plaintiff] was legally required to pay it) in violation of § 1692e(2)."  (*Id.* at 4).  She also points

27

out that the Complaint cites §§ 1692e and 1692(e)(2), which prohibit the use of "false representations" regarding the "legal status of any debt." She offers that "one inference from [her allegation that she 'does not owe any money to Defendants'] ... is that Plaintiff did not have a loan with defendants and that defendants, despite their representations in their letters and calls were not the owners of this debt." (*Id.* at 6-7).

Plaintiff's arguments here are unconvincing. Plaintiff emphasizes that the Supreme Court has recognized that "the plaintiff is the master of her complaint," which she takes to mean that "Defendants cannot restyle the Plaintiff's complaint for their own purposes." (Doc. 46 at 11-12 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). However, the *Caterpillar* Court's characterization that a plaintiff is the "master of her claim" meant simply that the plaintiff is generally entitled to plead her cause of action so as to pursue state-law remedies exclusively, forgoing those under federal law, in order to prevent removal to federal court under the federal-question statute. *See* 482 U.S. at 392; *see also* 28 U.S.C. §§ 1331, 1441(a). That does not imply, of course, that a complaint means whatever the plaintiff says or that a defendant may not argue (or that a court may not determine) that a complaint does not contain allegations supporting a particular claim for relief. And on that score, contrary to Plaintiff's suggestion, her assertion that she "does not owe any money to Defendants" (Compl. ¶ 10) did not itself put Defendants on notice of every conceivable factual or legal basis for why Plaintiff might claim that to be so.[3] *See Birdette v. Capitol One Bank (USA), NA*, 2012 WL 8319317, at *1 (11th Cir.

---

[3] A consumer might assert generally that she "does not owe any money" for any number of reasons other than that a debt collector or the creditor it is working for does not "own" the alleged debt. Such reasons would include, but are not necessarily limited to: (1) that the consumer did not incur the debt in question, (2) that the debt has been paid, (3) that the debt has been settled or otherwise released, (4) that a necessary condition precedent to liability has not

July 25, 2012) (affirming dismissal where complaint made "broad, conclusory statements

alleging that the defendants violated the FDCPA for allegedly attempting to collect a debt that

[the plaintiff] claimed he did not owe, and was not obligated to pay"); *Velazquez v. Arrow Fin.*

*Serv., LLC, 2009 WL 2780372*, at *2 (S.D. Cal. Aug. 31, 2009) (plaintiff's allegation that

defendant violated the FDCPA by seeking to collect a debt not actually owed was conclusory and

thus not entitled to an assumption of truth).  The fact of the matter is that Plaintiff has pled

*nothing* about Defendants' ownership of the debt, an ineffective purchase or assignment, or a

chain of title, so Defendants had no notice of this theory of liability.  Nor can Plaintiff's citation

to a list of numbered statutes within the FDCPA (*see* Compl. ¶¶ 62, 77) salvage the claim.  Such

boilerplate can assist in providing a framework for a claim as to pled factual allegations, but, in

and of itself it amounts to even less than the "labels and conclusions" or a "formulaic recitation

of the elements of a cause of action" that *Iqbal* and *Twombly* instruct are insufficient.  *See Lind v.*

*Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012) (affirming dismissal for failure to

state a claim where the "complaint alleged 'numerous and multiple' violations of the [FDCPA],

citing many provisions" but contained "no specific facts that demonstrate these violations other

---

occurred, or (5) that the debt has been discharged in bankruptcy.  On top of that, if the
consumer's assertion that she "does not owe" a debt is construed colloquially as simply a denial
of a creditor's right to *recover* on a debt, the list can be expanded to include such reasons as (6)
that the statute of frauds has not been satisfied and (7) that the statute of limitations has expired.
*See generally Ex parte HealthSouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007) ("When the statute
of limitations expires, it does not extinguish the cause of action; instead, it makes the remedy
unavailable."); *Dial v. Midland Funding, LLC*, 2015 WL 751690, at *2 (N.D. Ala. Feb. 23, 2015)
(recognizing that a plaintiff's allegations that she did not owe a debt and that the debt was time-
barred were inconsistent; "since there is no right to collect a debt not owed, such a right cannot
be time-barred").  Indeed, while the Complaint does not contain facts otherwise explaining why
Plaintiff does not "owe any money to Defendants," that allegation is followed by several
paragraphs discussing that Defendants could not legally enforce the debt because the statute of
limitations had expired.  (*See* Compl. ¶¶ 10-17).

than stating that defendants seized funds from [one of the plaintiffs] for a debt she did not owe"). Because Plaintiff has not pled facts to give notice of this FDCPA claim, it is not in this litigation, and Plaintiff is not entitled to rely upon on it to avoid summary judgment.

### b.   Threat to Report Plaintiff or the Debt to the IRS

Plaintiff also argues in her summary judgment brief that Defendants are liable under the FDCPA based on a letter dated December 21, 2011, that she received from Nationwide Credit, Inc. ("NCI"), a third-party retained by Resurgent to conduct initial collection efforts on the account.  (*See* Doc. 42-6; Henderson Dep. at 98-99).  That letter offered to settle the debt at a discount and stated in part, "Any amount foregiven as a result of your completing the settlement terms that is greater than or equal to $600.00 may be reported to the Internal Revenue Service and may be taxable income to you."  (Doc. 42-6).  Plaintiff now claims that such statement was misleading and unfair in violation of §§ 1692e and 1692f, specifically because she believed the debt collector was threatening to turn the matter over the Internal Revenue Service ("IRS") in order to make her pay the debt.  (Doc. 41 at 16, ¶¶ 23-24; *see also id.* at 8; Pl. Dep. at 74-75).

Defendants argue that this summary judgment theory or claim is due to be stricken because it is not in the Complaint.  Again, the undersigned agrees.  While the Complaint alleges that Plaintiff received "letters from the Defendants or from collection agencies for the Defendants" (Compl. ¶ 11), it does not identify this letter specifically, nor does it mention NCI or anything about the IRS.  As a result, even assuming that the letter could be construed by the least-sophisticated consumer as threatening to report Plaintiff or the debt to the IRS if she did not pay, which is questionable, the Complaint does not put Defendants on notice that Plaintiff is seeking to impose liability on that basis.

Plaintiff seems to take the position, however, that, since she has cited §§ 1692e and 1692f (Compl. ¶¶ 62, 77), she is entitled to proceed on the instant FDCPA theory and essentially any other that might be said to arise from any sort of misleading statement or threat in any call or letter she received from Defendants or their agents.  She appears to argue that she might do so because such claims would be consistent with her pled allegations (1) referencing her receipt of "calls and letters" from such parties (*id.* ¶ 11), (2) that Defendants are "attempt[ing] to illegally force [consumers] into paying debts that are either not owed or are well beyond the statute of limitations" (*id.* ¶ 13), and (3) that Defendants' "actions have annoyed, harassed, abused, and/or oppressed Plaintiff" (*id.* ¶ 27).  (*See* Doc. 46 at 8-9).  She further contends that any more specific conduct she now relies upon at summary judgment need not have been specifically pled because it amounts merely to "support" that "flesh[es] out" the broader claim or theory that is in the Complaint.  (*See id.* at 12-13).  The undersigned disagrees.

As a threshold matter, Defendants do not argue that Plaintiff's FDCPA claims are subject to a heightened pleading standard under FED. R. CIV. P.  9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake."  (*See* Doc. 44; *see also* Doc. 6, Defendants' Motion to Strike Portion of Plaintiff's Complaint, ¶ 1 (noting that Plaintiff's pleading is subject to FED. R. CIV. P.  8).  Accordingly, the court need not decide that issue, and it is assumed that only FED. R. CIV. P.  8(a) applies.[4]  Nonetheless, *Twombly* and *Iqbal* clearly

---

[4]Neither the Supreme Court, the Eleventh Circuit, nor any other federal court of appeals appears to have decided whether or to what extent FDCPA claims under §§ 1692e or 1692f might be subject to FED. R. CIV. P.  9(b).  *But cf. FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005) (holding that Rule 9(b) does not apply to claims alleging violation of § 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a)); *Jeter*, 760 F.2d at 1174 (analogizing claims under § 5 of the FTC Act to claims under § 1692e of the FDCPA).  The district courts are split.  *Compare, e.g., Cutler ex rel. Jay v. Sallie Mae, Inc.*, 2014

require at least a modicum of specific facts to support a "plausible" claim and give fair notice of

the grounds upon which it rests.  To that end, it was certainly enough for Plaintiff to state a

FDCPA claim by alleging, as she does, facts indicating that she received a phone call on or about

March 19, 2012, and that the agent employed by Resurgent made a threat on that call to report

the debt to a credit bureau despite that the account could no longer legally be reported on

Plaintiff's credit report.  However, even under Rule 8(a), Plaintiff cannot stake out a claim under

§§ 1692e or 1692f merely by stating that she received "calls and letters" as part of a scheme

undertaken by Defendants to "force" her to pay an out-of-statute debt, even if coupled with

general characterizations that such "calls and letters" were "misleading," "confusing," or

"unfair."  Rather, such a claim requires more specific allegations reasonably apprizing

Defendants of at least the nature and substance of the statements, threats, and communications

being challenged.  *See Hall v. HSBC Mortg. Services, Inc.*, 581 F. App'x 800, 803 (11th Cir.

2014) (affirming dismissal of FDCPA claims, concluding that "conclusory allegations that [the

defendant] wrongfully and deceptively attempted to collect a debt from him did not allow the

district court 'to infer more than the mere possibility of misconduct,' and did not move his claims

'across the line from conceivable to plausible.' " (quoting *Iqbal*, 556 U.S. at 679-80)); *Madura v.

Lakebridge Condominium Ass'n, Inc.*, 382 F. App'x 862, 865 n.2 (11th Cir. 2010) ("We see no

reversible error in the district court's grant of judgment on the pleadings on Plaintiffs' conclusory

---

WL 7745878, at *2-3 (C.D. Cal. Sep. 9, 2014) (holding Rule 9(b) applies to § 1692e claims to
the extent they are based on an alleged false or misleading communication), *and Wright v.
Specialized Loan Servicing, LLC*, 2014 WL 5308633, at *5 (E.D. Cal. Oct. 16, 2014) (same),
*with  Prophet v. Myers,* 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (holding that Rule 9(b) does
not apply to FDCPA claims even where a plaintiff alleges a defendant made false allegations),
*and Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) (same).

allegations that [the defendant's] communications violated several other sections of the FDCPA because they allegedly contained falsities, were misleading or otherwise were threatening."); *Burnett v. Mortgage Electronic Registration Syst's, Inc.*, 706 F.3d 1231, 1239-40 (10th Cir. 1013) ("[The plaintiff's FDCPA] complaint is not just deficient because it attributes actions to a large group of collective "defendants" ... but also because it is a litany of diverse and vague alleged acts ('emails, faxes, correspondence, and/or meetings, and the like') with zero details or concrete examples."). The cases relied upon by Plaintiff (*see* Doc. 46 at 13-14) are not to the contrary.[5]  And because open-ended allegations that Defendants misled Plaintiff in calls and

---

[5]Plaintiff cites *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006), for the proposition that a "complaint simply alleging that a collection letter was 'confusing' in violation of § 1692(g) (sic) was enough to survive a motion to dismiss." (Doc. 46 at 13). *McMillan,* however, was decided before *Twombly* and *Iqbal*. More importantly, the precise nature and substance of the challenged communication was laid bare in *McMillan* because, unlike here, the plaintiff attached a copy of the letter to the complaint pursuant to FED. R. CIV. P. 10(c). *See* 455 F.3d at 756-57. That also occurred in *Som v. Daniels Law Offices, PC*, 573 F. Supp. 2d 349, 352-53 (D. Mass. 2008). Plaintiff next cites *Edwards v. Zigler*, 2009 WL 3429661, at *3 (N.D. Cal. Oct. 22, 2009), because, she says, although granting the motion to dismiss the FDCPA claim, that court "specifically noted that plaintiff did not specify which statutory subsection was allegedly violated." (Doc. 46 at 14). Plaintiff presumably is suggesting that the court in *Edwards* would have found a viable claim had the complaint cited specific subsections of the FDCPA, as Plaintiff has done here. That is obviously wrong. Despite the absence of a cited subsection in the pleading, the court considered whether liability might attach under several provisions of the FDCPA but ultimately answered "no" because the complaint failed to support that the claims related to a "debt" or that the defendants were "debt collectors" as statutorily defined. *Edwards, supra*, at *3.

Finally, Plaintiff relies upon *Stinson v. GC Services, LP*, 2008 WL 2328210 (S.D. Tex. Jun. 4, 2008), and a case citing it, *Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208 (D. Mass. 2009). (Doc. 46 at 14). In neither case, though, did the court hold that the plaintiff stated an FDCPA claim based only upon general allegations that otherwise unidentified statements in a letter or phone call were misleading or confusing. Rather, the complaint in *Stinson* was deemed sufficient based on assertions that the defendant illegally threatened to garnish the plaintiff's wages and threatened to take further collection action without first sending the required debt validation notice. 2008 WL 2328210 at *1-2. Likewise in *Krasnor*, the court declined to dismiss the FDCPA count based on a list of eight specific factual allegations, including the defendant

letters are themselves insufficient to state a cognizable claim, she cannot use them as an anchor for raising more specific, unpled theories from the evidence at summary judgment.  As a result, Defendants' motion to strike is due to be granted as it relates to Plaintiff's unpled theory that the NCI letter included an implied threat to report Plaintiff to the IRS if she did not pay the debt.

**c.      Misleading Statements Regarding the Enforceability of the Debt and the Effect of the Limitations Period**

Next, Plaintiff claims that Defendants are liable under the FDCPA for misleading statements made about the enforceability of the debt.  More specifically, Plaintiff argues that Defendants engaged in conduct and made statements calculated to suggest falsely that, despite Plaintiff's undisputedly valid protests that the statute of limitations had expired years ago, Defendants still could sue, credit report the debt, or take some sort of other adverse legal action against her.  (Doc. 41 at 29-32).  In support of this theory, Plaintiff points both to written correspondence between herself and Defendants or their agents, as well as to her conversation with the agent on the collection call on March 19, 2012.

First, Plaintiff says that after receiving the dunning letter from NCI in December 2011, she sent a written reply to that entity that stated in relevant part:  "This is a debt that was charged off in the [year] of 1998, when I became disable[d].  As you know the statute of limitations is up on a debt that old, some time ago.  I have no idea where this came from."  (Doc. 42-7).  This prompted Resurgent to recall the account from NCI and send a letter of its own to Plaintiff, dated

---

threatened to garnish wages, threatened to take legal action without intending to do so, and failed to send specific validation information on the debt.  675 F. Supp. 2d at 212-13.  Indeed, the court appeared to suggest that the complaint's more general allegation that the "Defendant used abusive language in the communications with the Plaintiff" was *not* sufficient to satisfy the "plausibility" standard of *Twombly* and *Iqbal*.  *Id.*

February 15, 2012, that enclosed a "verification of debt" confirming that she owed $4,260.77 on

the First USA account.  (Doc. 42-8).  Resurgent sent another form letter, dated February 20,

2012, stating that "[Resurgent], one of its servicing agencies, or one of the three major consumer

reporting agencies has received an inquiry on this account."  (Doc. 42-10).  Resurgent further

told Plaintiff,

> [We are] currently investigating your claim.  Once a once a determination is
> made, we will contact you with the results of our research.  If your account is
> currently being reported to the three major consumer reporting agencies, we will
> submit a request to update your tradeline to 'account information disputed by
> consumer.'

(*Id.*)  At about the same time, Plaintiff sent a letter to Resurgent, also dated February 20, 2012, in

which she again stated that the debt had been "charged off" some 14 years earlier in 1998 when

she had become disabled.  (Doc. 42-9).  Plaintiff further added that such had occurred more than

six years prior (*id.*), which happens to be the statute of limitations in Alabama to bring suit on an

unsecured debt.  *See* Ala. Code § 6-2-43; *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480,

1488 (M.D. Ala. 1987).

Then came the collection call on March 19, 2012.  On that call, the Resurgent agent told

Plaintiff that he was calling to "help [her] resolve [her] dispute" regarding the First USA

MasterCard debt.  (Henderson Dep. at 138).  Plaintiff told the agent that there was "no way that

[he] could help [her] resolve this issue" because it was a 14-year old debt that First USA had

"charged off" in 1998 when she became disabled, she was "no longer responsible for the debt,"

and "the statute of limitations is up ... on that deal."  (*Id.* at 139-40).  While the agent

acknowledged that Plaintiff was "correct" that debt was "out of statute since 2004," he further

stated, "[E]ven though its out of statute, it's still a collectible debt, and I do want to let you know

that, okay?" (*Id.* at 140).  And the agent thereafter asked Plaintiff whether she had any further

questions about "this dispute process." (*Id.* at 142).

Finally, Plaintiff received another letter from Resurgent dated March 28, 2012.  (Doc. 42-

11).  It stated:

> Information you provided regarding this account has been forwarded to the
> Customer Service Department for research.  However, we have been unable to
> contact you to discuss this account.
>
> If we are unable to establish contact with you within 21 day from the date of this
> letter, active collection efforts will resume on your account.  If your account is
> currently being reported to the three major consumer reporting agencies, a request
> will be submitted to update your tradeline to indicate 'account information
> disputed by consumer.'

(*Id.*)

Plaintiff does not appear to contest that, under Alabama law, as in almost all jurisdictions,

the expiration of the statute of limitations does not extinguish a debt; it simply affords a defense

to judicial enforcement.  *See Ex parte HealthSouth Corp.*, 974 So. 2d at 296; *Crawford*, 758 F.3d

at 1259 (recognizing that a debt that is "time-barred" under the statute of limitations is

"unenforceable in court").  Further, courts have recognized that a debt collector's mere request

that a consumer pay an existing but time-barred debt does not itself run afoul of the FDCPA,

insofar as some might consider repayment a moral obligation even if the debt is not legally

enforceable.  *See Hinkle v. Northland Group Inc.*, 2011 WL 6748504, at *4 (S.D. Ga. Nov. 22,

2011); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014); *Huertas

v. Galaxy Asset Management*, 641 F.3d 28, 32-33 (3d Cir. 2011); *Freyermuth v. Credit Bureau

Services, Inc.*, 248 F.3d 767, 771 (8th Cir. 2001).  On the other hand, "Federal circuit and district

courts have uniformly held that a debt collector's threatening to sue on a time-barred debt [does]

36

violate[ ] §§ 1692e and 1692f." *Crawford*, 758 F.3d at 1259.  But even beyond that, "'whether a

debt is legally enforceable is a central fact about the character and legal status of that debt.'"

*Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 399 (6th Cir. 2015) (quoting *McMahon*, 744

F.3d at 1020).  Therefore, "the proposition that a debt collector violates the FDCPA when it

misleads an unsophisticated consumer to believe that a time-barred debt is legally enforceable,

regardless of whether litigation is threatened, is straightforward under [§ 1692e(2)(A)]."

*McMahon*, 744 F.3d at 1020; *accord Buchanan*, 776 F.3d at 398-99 ("When a dunning letter

creates confusion about a creditor's right to sue, that is illegal."); *see also Crawford*, 758 F.3d at

1261 ("A debt collector's filing of a time-barred proof of claim [in a bankruptcy proceeding]

creates the misleading impression to the debtor that the debt collector can legally enforce the

debt."); *Harris v. Total Card, Inc.*, 2013 WL 5221631, at *4 (N.D. Ill. Sep. 16, 2013); *cf.*

*Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 301 (3d Cir. 2008)

(while holding that letters offering to settle debts were not deceptive, the court noted that the

plaintiffs had "not alleged that the settlement letters ... made false statements about the debts'

enforceability").

      Plaintiff emphasizes that she had told Defendants that she believed she was no longer

responsible to pay the debt and that the statute of limitations had lapsed, but Defendants

continued to contact her, using "carefully scripted words and innuendo ... in an effort to play on

the fears of a financially vulnerable and unsophisticated elderly woman living on her [S]ocial

[S]ecurity disability benefits to harass and threaten her into paying this stale debt."  (Doc. 41 at 8;

*see also id.* at 30-31).  In support, Plaintiff argues that the Defendants treated her invocations of

the limitations period, made both in writing and verbally on the collection call, as raising a

"claim" or "dispute" that Defendants had to "investigate[ ]" through "research."  Plaintiff asserts that such led her to believe that Defendants were contesting her assertion that she did not have to pay the debt based upon the statute of limitations, despite the fact that Defendants knew from the very first that Plaintiff's claim to that effect was entirely valid and that Defendants never did, nor intended to do, any "research" or "investigation" on the account.  She also took the references in the letters advising that, "if" the account were being credit reported, Resurgent would submit a request to "update [her] tradeline" to indicate "account information disputed by consumer," as a veiled threat to credit report the debt.

Plaintiff further claims that, particularly in light of such representations, the agent's statement on the collection call emphasizing that the debt was still "collectible" despite her "dispute" was likewise an attempt to bully her into believing that the debt was still enforceable, whether by a lawsuit; credit reporting the debt; or the imposition of some other materially adverse consequence, even if not explicitly defined.  Plaintiff seems willing to assume that the agent's characterization of the debt as "collectible" may have been literally accurate in the sense that, because the limitations period did not erase the debt, a debt collector could still ask her to pay and legally "collect" the funds if she agreed.  However, even literally true statements can be misleading in violation of the FDCPA.  *See Gonzalez*, 660 F.3d at 1062; *McMillan*, 455 F.3d at 761.  Further, she argues that the "least sophisticated consumer" would easily elide the slippery distinction between an a debt collector's assertion that a debt remains "collectible" and an assertion that it remains "enforceable" by some legal means.  *Cf. Buchanan*, 776 F.3d at 399-400 (holding that letter offering to "settle" a time-barred debt at a discount may be misleading as falsely suggesting that the debt remains legally enforceable); *McMahon*, 744 F.3d at 1020-21

(holding similarly).  That is particularly true, Plaintiff contends, where, as here, (1) the agent makes such a statement in direct response to a consumer's assertions that she was no longer responsible for the debt and that the limitations period had expired and (2) the debt collector neither offers any further explanation of what "collectible" means nor clearly acknowledges a lack of any legal recourse whatever if the consumer does not pay.  *See generally Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999 ) ("[A] letter may confuse even though it is not internally contradictory.  Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade.").

Defendants' sole argument in response is that Plaintiff has not sufficiently pled any of these FDCPA theories, either.  In short, it is Defendants' position that the Complaint is directed solely to what occurred on the phone call of March 19, 2012, not the content of any letters, and that the only claims Plaintiff has raised about the phone call are: (1) that the agent *explicitly* threatened to credit report the debt and (2) that no mini-*Miranda* warning was given.  And as it relates to Plaintiff's instant theory, Defendants posits that Plaintiff's pleading makes "no reference to threats contained in written communications, but the opposition to summary judgment rests heavily upon the collection letters."  (Doc. 44 at 9)  Likewise, Defendants urge, "There is no indication in the Complaint that Plaintiff is making a claim that she was confused by any statement about the limitations period, the meaning of any legal term, or whether she was legally responsible to repay the debt."  (*Id.*)

The undersigned agrees with Plaintiff, however, that the Complaint does fairly encompass an FDCPA claim for misleading statements, in both the call and the letters, regarding the

enforceability of the debt and the practical ability of Defendants to sue, credit report the debt, or take some other adverse action against Plaintiff despite the expiration of the statute of limitations.  First, Defendants insist that the material paragraphs of the pleading in which Plaintiff describes the substance of Defendants' allegedly actionable statements and threats (*see* Compl. ¶¶ 15-29) can *only* be read as referring *only* to the conversation between Plaintiff and the Resurgent agent that occurred on the phone call of March 19, 2012, which is specifically identified in paragraph 14.  That is not an unreasonable reading; it may even be the most natural one.  But considering the Complaint in its entirety, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007), it is at least ambiguous on this score.  The pleading declares from its very outset, "This action arises out of Defendant's (sic) *repeated violations* of the [FDCPA] ... in their illegal *efforts* to collect a consumer debt from Plaintiff."  (*Id.* ¶ 1 (emphasis added)).  Plaintiff also claims, in the same section of the Complaint describing the Defendants' allegedly actionable statements, that she received not only the phone call of March 19th but multiple "letters from Defendants or from collection agencies for the Defendants" (*Id.* ¶ 11) and she mentions letters that she had sent about the debt and Defendants response thereto.  (*Id.* ¶¶ 18, 19).  She similarly asserts, "All of the above described collection communications made to Plaintiff by Defendants and collection agents of Defendant were made in violation of the FDCPA" (*id.* ¶ 61), and that Defendants made "repeated attempts to collect this debt from Plaintiff and refus[ed] to stop violating the law ...."  (*Id.* ¶ 66).  Further, the paragraphs describing the communications at issue do not say they were made by or to the "agent" nor that they were made on the phone call.  Rather, they refer more generally to communications between "Plaintiff" and "Defendants."  (*See* Compl. ¶¶ 15-21).

40

While it is a close question, the Complaint is susceptible to an interpretation that the paragraphs describing the material communications underlying the FDCPA claims refer not only to the phone call but also to written correspondence between the parties.  It is true that Plaintiff does not specifically identify, by date or otherwise, any of the "letters" that would have contained the challenged communications.  But again, it is assumed that Plaintiff's FDCPA claims are subject only to the liberal notice pleading standard of FED. R. CIV. P.  8(a) because Defendants have not argued otherwise.  Under that standard, it is not a rigid requirement that Plaintiff specifically plead the date of letters she received that allegedly violate the FDCPA.  *See Kruckenberg v. McKellar Group, LLC*, 2014 WL 4063285, at *3 (S.D. Cal. Aug. 14, 2014).  Further, any ambiguity in this regard not only could be but *actually was* dispelled in the course of discovery.  That is, each of the letters Plaintiff now relies was produced in discovery and Defendants' counsel examined her at deposition about them.  Thus, this is not a case where the defendant has been blindsided by new evidence.  Accordingly, the undersigned believes that the Complaint did put Defendants on notice that Plaintiff was claiming that the letters violated the FDCPA, at least insofar as the Complaint sufficiently describes the substance of the challenged statements and threats.

But even assuming for the sake of argument that Defendants are correct that the Complaint seeks to impose liability specifically for only the call on March 19, 2012, Plaintiff has still stated a FDCPA claim that the agent made misleading statements regarding the enforceability of the debt and the practical ability of the statute of limitations to protect Plaintiff from adverse action.  Plaintiff has pled that Defendants are "targeting consumers ... in an attempt to illegally force them into paying debts that are either not owed or are well beyond the statute of

41

limitations." (Compl. ¶ 13). She has expressly alleged that "Defendants ... claimed that Plaintiff still *had to* pay the debt even though the statute of limitations had expired" (Compl. ¶ 17 (emphasis added)), that "Defendants ... said that [she] *needed to* pay this debt" (*id.* ¶ 19 (emphasis added)), and that she was "lied to and threatened by Defendants." (*Id.* ¶ 28). Plaintiff has also claimed that Defendants' conduct violated 15 U.S.C. § 1692e(2)(A) (Compl. ¶¶ 62, 77), which prohibits a debt collector from making false or misleading statements regarding the legal status of a debt. Defendants' motion to strike ignores all of these allegations.[6] (*See* Doc. 44 at 8). Based upon them, Defendants had fair notice of a claim that they, through the agent on the call, made false or misleading statements suggesting that, despite the lapse of limitations period, the debt remained enforceable by some means, even if those not specifically identified, in violation of § 1692e(2)(A). *See Lashbrook*, 2013 WL 4604281, at *9 n.9 (holding that, viewed through the eyes of an unsophisticated consumer, a debt collector's assertion that the plaintiff "ha[d] to pay" a time-barred debt was sufficiently misleading to present a jury question on FDCPA liability); *Herrera v. LCS Fin. Serv's Corp.*, 2009 2912517, at *7-8 (N.D. Cal. Sep. 9, 2009) (recognizing that letter advising that the plaintiff "must submit payment ... for the entire amount of the debt" might be found misleading under § 1692e(2)(A) where the debt still existed but recovery would be barred by California's "anti-deficiency" statute); *see also Merriam-Webster's Collegiate Dictionary* 532 (10th ed.) (defining "have" as meaning "to be compelled, obliged, or required – used with an infinitive with to or to alone <we *had* to go>"); *id.* at 774-75 (defining "need" as meaning "necessary duty: OBLIGATION").

---

[6]The undersigned would also note that none of these allegations were a target of an earlier motion by Defendants that sought to strike certain paragraphs of the Complaint, which the court denied. (*See* Doc. 6 & Unnumbered Docket Entry dated March 31, 2014).

To be sure, Plaintiff no longer asserts that the agent used the precise words that she "had to pay" or "needed to pay" the debt, as pled in the Complaint.  Indeed, while that might be Plaintiff's best recollection of the agent's verbal statements, any such assertion would be belied by the audio recording.  However, "[s]pecific facts are not necessary [to comply with FED. R. CIV. P.  8(a)(2)]; the statement [of the claim] need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555, (quoting *Conley*, 355 U.S. at 47); *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) ("[N]otice pleading [does] not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim." (internal quotation marks and citation omitted)).  Again, it is assumed here that FED. R. CIV. P.  9(b) is not applicable to Plaintiff's FDCPA claims.  But even assuming that it does, "Plaintiff need not articulate verbatim the particular fraudulent statements made," even under Rule 9(b).  *Kuehne v. FSM Capital Management, LLC*, 2013 WL 1814903, at *4 (S.D. Fla. Apr. 29, 2013) (citing *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir.1988); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)); *see also Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 818 (N.D. Ill. 2013) ("Rule 9(b) does not act as a rigid bar to filing a charge of fraud for individuals with less than perfect knowledge.").

Ultimately, Plaintiff's instant FDCPA theory is clearly based upon her pled claim that the agent made misleading statements that she "had to pay" or "needed to pay" the debt despite the lapse of the statute of limitations.  In essence, Plaintiff is claiming that the agent's use of the cryptic, legal-sounding term "collectible debt," made directly in the face of her express denial of

responsibility and her invocation of the limitations period, *was* a misleading statement that she still "had to pay" or "needed to pay" the debt and conveyed that Defendants still could do *something* adverse to her beyond merely asking for voluntary payment.  Thus, Plaintiff's pled claim that the Defendants misrepresented the legal status of the debt in violation of § 1692e(2)(A), by telling her that she still "had to" or "needed to" pay the debt even though the limitations period had expired, afforded Defendants fair notice of Plaintiff's instant theory.  As a consequence, Defendants' motion to strike is due to be denied as it relates to this theory.  Further, while Defendants have remarked in passing that all of the ostensibly "new" claims challenged in their motion to strike "are proverbial red-herrings" (Doc. 44 at 4), Defendants have offered no substantive argument to rebut Plaintiff's contention that a jury could find Defendants statements to have been misleading for purposes of the FDCPA.  Therefore, Defendants have not demonstrated that they are entitled to summary judgment on such a basis.[7]

### 3.    Liability of PYOD under the FDCPA

Defendant PYOD moves for summary judgment on FDCPA liability on the ground that all of the alleged debt collection activity of which Plaintiff complains was actually undertaken by

---

[7]Even to the extent that Defendants may be correct that the Complaint does not seek to impose FDCPA liability directly for statements in the letters, such does not necessarily mean that all or some of the letters are inadmissible or cannot be considered for any purpose, either at summary judgment or at trial.  That is, even if letters cannot be the basis for directly imposing liability, they still may be relevant, admissible evidence providing background information in support of a claim that Plaintiff has sufficiently pled.  One might imagine, for example, that correspondence between Plaintiff and Defendants and their agents, from before the collection call on March 19, 2012, even if not properly challenged in the Complaint, could provide context to her pled claim that statements made by the agent on the call regarding the enforceability of the debt or the validity or effect of her statute of limitations defense were misleading in light of the prior communications.  *Cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (recognizing that a plaintiff may use evidence of time-barred acts in support of a timely pled employment discrimination claim under Title VII).

Defendant Resurgent.  PYOD asserts that both it and Resurgent are affiliates of a third party, Sherman Originator ("Sherman").  (See Doc. 39-4, Deposition of PYOD Rule 30(b) Representative, Jean Paul Torres ("Torres Dep.") at 6-7).  Sherman purchases defaulted debt and then transfers ownership of it to PYOD through an assignment.  (Torres Dep. at 6-7).  Although PYOD retains legal ownership of the debt, PYOD has no employees and undertakes no collection efforts itself.  (*Id.* at 23).  Rather, the documents supporting the debt are "managed" by Resurgent, which, in turn, undertakes or directs the efforts to collect.  (*Id.* at 8-9).  PYOD maintains, therefore, that it is merely an "asset-holding entity" that never contacted or communicated with Plaintiff, didn't employ the agent that spoke with her, and neither controlled nor reserve the right to control Resurgent's activities in seeking to liquidate Plaintiff's debt.  (*Id.* at 23).

Plaintiff does not seriously dispute any of these facts.  She contends, however, that PYOD might still be liable under the FDCPA, either directly or vicariously.  Plaintiff first argues that PYOD could be liable directly on the basis that "PYOD held itself out as the owner of the subject debt."  (Doc. 41 at 32).  Plaintiff contends that since "Resurgent represented this fact to [her] on PYOD's behalf in [several] collection letters" and "PYOD cannot prove that it owns this debt," the "false representation subjects PYOD to direct liability [for a violation of] § 1692e."  (*Id.* at 32-33).  Whatever the merits of this argument otherwise, it is due to be rejected on procedural grounds.  The undersigned has recommended that Defendants' motion to strike be granted as it relates to Plaintiff's summary judgment arguments seeking to impose FDCPA liability against Defendants for violating § 1692e by misrepresenting their legal ownership of the debt, because Plaintiff has not pled such a claim in the Complaint.  Accordingly, Plaintiff is precluded from

proceeding on a theory that PYOD is liable for misrepresenting that it legally owned the debt.

Plaintiff also contends that PYOD is vicariously liable for FDCPA violations committed by Resurgent.  (Doc. 41 at 33-34).  In particular, Plaintiff argues that, under *Pollice v. National Tax Funding, LP*, 225 F.3d 379, 404-05 (3d Cir. 2000), a defendant that itself meets the definition of a "debt collector" under § 1692a(6) is vicariously liable for FDCPA violations arising out of collection activities undertaken on its behalf by another debt collector.  Plaintiff also cites *Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1202 (N.D. Ala. 2013), in which Judge Acker applied *Pollice*, recognizing that, in *LeBlanc*, *supra*, the Eleventh Circuit had cited *Pollice* with approval "for the closely related proposition that a general partner of a debt collector partnership can be held liable for the partnership's violations of the FDCPA." Plaintiff contends that *Pollice* applies because, according to Plaintiff, Resurgent and PYOD are both "debt collectors" and Resurgent's collection efforts here were undertaken on PYOD's behalf.  (Doc. 41 at 32-34).  In reply, PYOD does not contest the soundness of the vicarious liability principle embodied by *Pollice*.  Instead, PYOD argues only that such principle is inapplicable because, PYOD says, the evidence shows that it is not a "debt collector" under the statute.  (Doc. 45 at 10).  Thus, the question becomes one of PYOD's status as a "debt collector."

For purposes of the FDCPA,

[t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

15 U.S.C. § 1692a(6); *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012).  PYOD maintains that there is no evidence that it is a debt collector because it

is merely "an asset-holding entity" that did not take any steps to collect Plaintiff's debt.  (Doc. 45 at 10).  However, a party that takes an assignment of a debt that has already gone into default may be a debt collector under the FDCPA, even if the party does not itself actively attempt to collect the debt and instead has some other entity undertake such efforts.  *See Garst*, 989 F. Supp. 2d at 1202 ("[Deutsche] only became a debt collector when it acquired a loan that was already in default. .... Deutsche is thus subject to the mandates of the FDCPA, whether it acted directly or through GMAC as its agent."); *Pollice*, 225 F.3d at 403-04 (rejecting district court's conclusion that defendant was "not in the business of collecting debts and [did] not in fact collect debts" where defendant's business was the purchase of defaulted debt from municipalities and defendant enlisted another corporate affiliate to actively collect on its behalf); *see also Plummer v. Atlantic Credit & Finance, Inc.*, ___ F. Supp. 3d ___, ___, 2014 WL 6969546, at *3-4 (S.D.N.Y. Dec. 8, 2014); *Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 WL 3756589, at *5 (S.D. Tex. Aug. 28, 2012); *Suquilanda v. Cohen & Slamowitz, LLP*, 2011 WL 4344044, at *10 (S.D.N.Y. Sep. 8, 2011).  PYOD also emphasizes that it does not itself "purchase" debts. However, whether a party purchases defaulted debt or merely receives an assignment of rights is irrelevant for purposes of determining whether the party is a debt collector.  *See FTC v. Check Investors, Inc.*, 502 F.3d 159, 174 (3d Cir. 2007) ("The fact that the NSF checks were purchased and owned outright by Check Investors, rather than Check Investors merely receiving an assignment of the rights of the original payee is ... irrelevant for purposes of determining whether Check Investors was acting as a debt collector or a creditor.").  The record here suggests that PYOD's entire *raison d'etre* is to act as a vessel for the assignment of defaulted debts formally purchased by its parent, Sherman, for the sole purpose of facilitating efforts by Resurgent or

other corporate affiliates to collect on PYOD's behalf.  "Holding title to debt portfolios and collaborating with a servicer to collect debt, ... is, at a minimum, an indirect attempt to collect a debt owed to another."  *Rodriguez*, 2012 WL 3756589, at *5.  There is also no dispute that Plaintiff's debt in this case was in default when it was purchased by Sherman and assigned to PYOD, nor that Resurgent's collection efforts were undertaken for PYOD as the current owner of the debt.  These circumstances indicate that PYOD is a "business the principal purpose of which is the collection of any debts" under § 1692a(6).  Such would authorize vicarious liability for violations committed by Resurgent, so PYOD is not entitled to summary judgment on FDCPA liability based on its arguments to the contrary.

### B.   Invasion of Privacy

Defendants have moved for summary judgment on Plaintiff's claims in Count II alleging invasion of privacy under Alabama law.  "In the debtor-creditor context, invasion of privacy has been characterized as 'the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' " *Shuler v. Ingram & Associates*, 441 F. App'x 712, 720 (11th Cir. 2011) (quoting *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985)).  However,

> FDCPA violations do not necessarily constitute invasion of privacy under Alabama law.  *Leahey v. Franklin Collection Serv., Inc.*, 756 F. Supp. 2d 1322, 1327 (N.D. Ala. 2010).  "The mere effort ... to collect a debt cannot without more be considered a wrongful and actionable instruction.  The Alabama Supreme Court has 'recognized the right of a creditor to take reasonable action to pursue a debtor and collect a debt.' " *Shuler*, 441 F. App'x at 720 (quoting *Barnwell*, 481 So. 2d at 865).  Moreover, efforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy.  *Leahey*, 756 F. Supp. 2d at 1327-28.

*Henry v. Allied Interstate, Inc.*, 2015 WL 877719, at *5 (N.D. Ala. Mar. 2, 2015).

Defendants argue that Plaintiff's testimony does not show circumstances supporting liability for invasion of privacy in Alabama.  The undersigned agrees.   Generally speaking, the cases "have only recognized intrusion ... for 'hounding the plaintiff,' *Hope v. BSI Financial, Inc.*, 2012 WL 5379177, at *5 (N.D. Ala. Oct. 26, 2012), with 'repeated conduct equating deliberate harassment or systematic campaigns designed to vilify the debtor or expose him to public ridicule,' [*Liberty Loan Corp. of Gadsden v. Mizell*, 410 So. 2d 45, 48 (Ala. 1982)]."  *Garst*, 989 F. Supp. 2d at 1206; *see also Sparks v. Phillips & Cohen Associates, Ltd.*, 641 F. Supp. 2d 1234, 1252-53 (S.D. Ala. 2008).  Here, Plaintiff received a total of only four letters (*see* Docs. 42-6, 42-8, 42-10, and 42-11), and had the one phone conversation with the Resurgent agent on March 19, 2012, over a period from mid-December 2011 to about the end of March 2012.[8]  Plaintiff has also testified that she was not put out by the volume or frequency of communications she received.  (Pl. Dep. at 111-12).  She does not claim, nor does the record otherwise support, that any of the calls or letters were belligerent or abusive in nature.  Plaintiff says, rather, that she was upset because Defendants were contacting her in an effort to collect a debt for which she believed she was no longer responsible because it had been "charged off" and the statute of limitations had expired.  She also insists that the agent on the call made an explicit threat to have the account appear on her credit report.  However, the audio recording of the call establishes as a matter of law that the agent made no such threat.  Also, even though Defendants could no longer actually or threaten to either sue or credit report the debt, Plaintiff was actually mistaken insofar as she

---

[8]The record indicates that numerous additional automated calls were initiated to Plaintiff's number between March 17 and March 28, 2012, with four apparently being connected for at least a few seconds (*see* Doc. 42-4 at 5; Henderson Dep. at 131-32), but Plaintiff clearly says that she remembers and had a problem only with the one call she answered on March 19th. (Pl. Dep. at 109-10).

may have believed that the debt was legally extinguished because it had been "charged off" or that Defendants were prohibited from even contacting her in an effort to seek payment.  As discussed previously, the record allows that Defendants could suffer FDCPA liability for failing to provide a mini-*Miranda* warning on the phone call and for making certain statements that "the least sophisticated consumer" might interpret as falsely implying the debt was still legally enforceable despite the statute of limitations.  But such technical, discrete violations of the FDCPA fall short of themselves demonstrating that Plaintiff endured sustained harassment or undue offense or embarrassment so as to find that Defendants intruded into her seclusion.  *See Leahey*, 756 F. Supp. 2d at 1327-28.  Defendants' motion for summary judgment is due to be granted as to Count II.

### C.   Claims for "Negligent, Wanton, and Intentional Conduct" in Attempting to Collect the Debt

In Count IV, Plaintiff has asserted broadly that Defendants acted "with negligence, malice, wantonness, recklessness, and/or intentional conduct (sic) in their dealings with and about Plaintiff," as it relates to the attempts to collect the debt.  (Compl. ¶ 108).   Defendants claim that they are entitled to summary judgment on these claims.  (Doc. 40 at 27-29).  For the reasons that follow, the undersigned agrees.

To the extent they sound in simple negligence, these claims fail.  First, the statutory duty imposed on debt collectors under the FDCPA is not such that a violation establishes a breach of the common-law duty of reasonable care under Alabama law.  *See Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1293-94 (M.D. Ala. 2010) (a violation of the FDCPA does not constitute negligence per se in Alabama); *Prickett v. BAC Home Loans*, 946 F. Supp. 2d

1236, 1244 (N.D. Ala. 2013) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing"); *see also Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) ("The FDCPA is not simply a federal codification of common-law negligence."); *see also Sellfors v. United States*, 697 F.2d 1362, 1367 (11th Cir. 1983) (violation of a federal statutory duty does not automatically invoke state law principles of negligence per se). Moreover, the only injury that Plaintiff has potentially suffered as a result of Defendants' representations and omissions in attempting to collect the debt is mental anguish and emotional distress.  "Alabama law is clear that '[d]amages for mental anguish are not recoverable in negligence except when the plaintiff has suffered physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by the conduct.' " *Lindsey v. NCO Fin. Systems, Inc.*, 2012 WL 3999870, at *3 (N.D. Ala. Sep. 12, 2012) (quoting *Brown v. First Fed. Bank*, 95 So. 3d 803, 818 (Ala. Civ. App. 2012) (quoting *George H. Lanier Mem'l Hosp. v. Andrews*, 901 So. 2d 714, 725 (Ala. 2004)) and citing *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993, 999 (Ala. 2008)).  It is undisputed that Plaintiff did not suffer physical injury and was not placed in immediate risk of physical injury as a result of Defendants' communications regarding the collection of a debt.  Accordingly, Plaintiff cannot recover even if Defendants' violations of the FDCPA could constitute negligence under state law.  *Id.*

Plaintiff maintains, though, that, even if her negligence claims fail, she could recover if Defendants' actions seeking to collect the debt rise to the level of wanton misconduct, citing *Lindsey*.  (Doc. 41 at 35).  But just as Defendants' putative violations of the FDCPA do not constitute negligence under Alabama law, they also do not constitute wantonness.  *See Prickett*, 946 F. Supp. 2d at 1244; *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1168

(M.D. Ala. 1999).  Further, the nature of Defendants' alleged conduct, whether painted as wanton, reckless, or even intentional, is not such that it might allow Plaintiff to recover for what is a purely emotional injury without at least a threat of physical harm.  The Alabama Supreme Court has recognized that one who by "extreme and outrageous conduct" either "intentionally or recklessly causes severe emotional distress is subject to liability for such emotional distress and for bodily harm resulting from the distress." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 841 (Ala. 2003) (quoting *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).  However, for such liability to attach, the defendant's conduct must so "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (quoting *Inmon, supra*) (emphasis omitted).  Likewise, the emotional distress suffered by the plaintiff "must be so severe that no reasonable person could be expected to endure it." *Id.* (quoting *Inmon, supra*).  A plaintiff may recover under those standards even if she has suffered no injury other than emotional distress.  *Inmon*, 394 So. 2d at 363; *see also AALAR Ltd. v. Francis*, 716 So. 2d 1141, 1144-45 (Ala. 1998) (observing that the tort of outrage authorized in *Inmon* represents a departure from the Alabama Supreme Court's traditional refusal to recognize "a broad, generalized duty to refrain from engaging in conduct that could foreseeably result in some form of emotional distress.").  Suffice it say, however, that a debt collector's failure to expressly advise a consumer that a communication is an attempt to collect a debt and making ambiguous statements that might be taken as falsely suggesting that a time-barred debt remains legally enforceable is not the stuff of such a claim.  *See Green Tree Acceptance, Inc. v. Standridge,* 565 So. 2d 38, 44-45 (Ala. 1990); *McCall ex rel. McCall v. Household Finance Corp.,* 122 So. 3d

832, 837 (Ala. Civ. App. 2013); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1236 (N.D.

Ala. 2013); *Jackson v. Countrywide Home Loans, Inc.*, 2012 WL 777180, at *8 (M.D. Ala. Mar.

7, 2012); *cf. Shuler*, 441 F. App'x at 720 (holding that debt collection efforts would not cause

"outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities"

for purposes of a claim for invasion of privacy).  Further, to the extent that the case might be

interpreted to suggest that, where the plaintiff has suffered only emotional harm and was not in

the zone of physical danger, Alabama law authorizes recovery on a claim of wantonness under

standards less demanding than those articulated in *Inmon* and its progeny, the undersigned would

not follow *Lindsey*.[9]  Defendants are entitled to summary judgment on the claims in Count IV.

###    D.    Negligent or Wanton Hiring, Training, and Supervision

Finally, Plaintiff alleges in Count III of the Complaint that Defendants are liable under

---

[9]In *Lindsey*, a debt collection case, Judge Acker stated that the "Alabama courts have
acknowledged that damages for emotional distress or mental anguish alone may be recoverable
for wantonness," even "absent physical injury or plaintiff being in the 'zone of danger' ...."  2012
WL 3999870, at *4 (citing *Brown v. First Fed. Bank*, 95 So. 3d 803 (Ala. Civ. App. 2012)).
Judge Acker denied summary judgment, concluding that the plaintiff had presented evidence
creating a jury question on whether she had suffered emotional distress as a result of the
defendant's collection efforts.  *Id.* at *4-7.  The opinion does not mention the standards for
recovery for emotional distress under *Inmon*, nor does the issue appear to have been argued.
However, *Inmon* applies on its face to claims alleging infliction of emotional distress caused
either "intentionally or *recklessly*."  394 So. 2d at 365.  The Alabama Supreme Court has applied
the *Inmon* standard to claims alleging emotional distress from debt collection activities.  *See
Standridge*, 565 So. 2d at 44, and the Court's more recent decisions indicate that the "intentional
or reckless" formulation remains the yardstick.  *See, e.g., Laurel v. Prince*, 154 So. 3d 95, 100
(Ala. 2014); *Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012).  Further, Alabama law defines
"wantonness" as "conduct which is carried on with a *reckless* or conscious disregard of the rights
or safety of others."  Ala. Code § 6-11-20(b)(3) (emphasis added); *see also Ex parte Capstone
Bldg. Corp.*, 96 So. 3d 77, 84-86 (Ala. 1998).  In the end, it is simply makes no logical sense that
Alabama would sanction *broader* liability for a purely emotional injury caused by wanton or
reckless misconduct than when such an injury is inflicted intentionally, insofar as the defendant's
mental state in the former scenario is *less* culpable.

Alabama law for negligent or wanton "hiring, training, and supervision of incompetent debt collectors."   Under this cause of action, "a master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Hunt v. 21st Mortg. Corp.*, 2014 WL 426275, at *9 (N.D. Ala. Feb. 4, 2014) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001) (citations omitted)).   "To sustain a claim for negligent or wanton hiring or supervision, training and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Leahey*, 756 F. Supp. 2d at 1328–29 (citations and quotation marks omitted); *see also Shuler*, 441 F. App'x at 720-21.   Defendants contend that they are entitled to summary judgment on these claims because the record does not support that any agent or employee of any Defendant committed a tort under Alabama law or that Defendants were on notice of any unfitness of the agent on the call or any other employee.  (Doc. 40 at 24-27).  The undersigned agrees.  Indeed, Plaintiff does not offer any argument specifically disputing the latter point.  (See Doc. 41 at 34-35; *see also* Henderson Dep. at 56-69 (discussing agent training); *id.* at 79-84, 89 (discussing the employment history of the agent on the call).  Accordingly, Defendants' motion for summary judgment is due to be granted as to Count III.

## IV.    CONCLUSION

Based on the foregoing, the undersigned finds that Defendants' motion to strike (doc. 44) and Defendants' motion for summary judgment (doc. 39) are due to be GRANTED IN PART AND DENIED IN PART, as follows:

Defendants' motion to strike is due to be GRANTED to the extent it is directed at FDCPA claims based on alleged misrepresentations regarding Defendants' ownership of the debt

and based on an alleged threat to report Plaintiff or the debt to the IRS if she did not pay; it is otherwise due to be DENIED.

Defendants' motion for summary judgment is due to be GRANTED as to (1) Plaintiff's FDCPA claim alleging that the agent on the March 19, 2012, collection call threatened to report the debt to a credit agency, as well as on (2) all of Plaintiff's claims arising under Alabama state law.  Summary judgment is due to be DENIED as it relates to (1) Plaintiff's mini-*Miranda* FDCPA claim and (2) as it relates to FDCPA liability for misleading statements, both on the call and in letters, related to the enforceability of the debt and the validity and effect of Plaintiff's claim that she did not have to pay it because the statute of limitations had expired.  The motion is also due to be denied insofar as Defendant PYOD argues that it cannot be liable for any FDCPA violations committed by Resurgent or its employees.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE**, this 31st day of March, 2015.

**JOHN E. OTT**
Chief United States Magistrate Judge